STATE EX REL. SAMLIN, PLAINTIFF, *v.* DISTRICT COURT ET AL., DEFENDANTS.

(No. 4,824.)

(Submitted March 14, 1921. Decided May 6, 1921.)

[198 Pac. 362.]

*Prohibition—Intoxicating Liquors—Searches and Seizures— Search-warrants—Constitution—Complaint—Insufficiency— Illegally Seized Property—Use as Evidence—When Improper—Return of Property to Claimant—When Proper.*

Intoxicating Liquors — Search-warrant — Complaint—Insufficiency—Constitution.

1. *Held,* on application for writ of prohibition, that a complaint filed in the district court under the Prohibition Enforcement Act (Chap. 143, Laws of 1917), stating, in the form of a conclusion, that affiant "has probable cause to believe and does believe" that on a given day intoxicating liquors were being unlawfully possessed, kept, *etc.,* on certain premises, was insufficient to give the district court or judge jurisdiction to issue a search-warrant, that the warrant issued in pursuance thereof was violative of the inhibition contained in section 7, Article III, of the state Constitution, against unreasonable searches and seizures, and that the proceeding based thereon was void *ab initio.*

Unreasonable Searches and Seizures—Federal Constitution—Provisions Inapplicable.

2. The inhibitions against unreasonable searches and seizures contained in the fourth and fifth amendments of the federal Constitution, not being limitations upon the powers of the several states, but only upon the powers delegated to the federal government, are not pertinent to a case arising under a state statute.

**Same—Definition of Constitutional Guaranty.**

3. The guaranty against unreasonable searches and seizures embodied in section 7, Article III, of the state Constitution applies to all invasions by the state government or any of its employees, of the sanctity of the home of the citizen, his personal security, personal liberty and private property where there is no probable cause to believe that his rights in this behalf have been forfeited by his own criminal conduct.

**Same—Strict Construction of Constitutional Provisions.**

4. Since the constitutional provision against unreasonable searches and seizures was intended to take away from the legislature the power to authorize an invasion of the rights of the citizen by a search of his home or a seizure of his person or property in any other case than in which it is permitted, it must be strictly construed in his favor.

**Intoxicating Liquors—Search-warrants—Complaint—Facts to be Stated.**

5. On application to a district judge for a search-warrant under section 7 of the Prohibition Enforcement Act, the facts upon which it is made must be stated under oath, whereupon it becomes his duty to determine their sufficiency to show probable cause for its issuance, without reference to the opinion or belief of the applicant in that regard.

**Same—Statutes—Construction.**

6. The Prohibition Enforcement Act, in so far as it relates to the issuance of search-warrants, is *in pari materia* with the sections of the Revised Codes upon the subject, and must be construed accordingly.

**Same—Complaint—Hearsay and Rumor Insufficient.**

7. To meet the requirements of the constitutional guaranty against unreasonable searches and seizures and of the sections of the Revised Codes upon the same subject, the affidavit or complaint upon which a search-warrant is asked under the Prohibition Enforcement Act must be based upon something more tangible than mere hearsay or rumor.

**Same — Trial — Articles Unlawfully Seized — Use as Evidence — When Improper.**

8. Articles taken from one accused of crime may be used as evidence against him upon the trial, over his objection that the prosecution obtained possession of them unlawfully. Where, however, the question is raised before trial, by a direct proceeding to test the legality of the means by which possession was secured, the court must order them returned if unlawfully obtained; if not returned and thereafter received in evidence against defendant, a judgment of conviction must be reversed.

**Same—When Liquors to be Restored to Claimant.**

9. Under the above rule, plaintiff having made application for the return of liquors seized under a search-warrant illegally issued, was entitled to have them restored to him.

---

3. Constitutional guaranties against unreasonable searches and seizures as applied to search for or seizure of intoxicating liquor, see note in 3 A. L. R. 1514.

Search and seizure under the Volstead Act, see note in 10 A. L. R. 1553.

8. Admissibility of evidence secured by search or seizure, see notes in 15 Ann. Cas. 1205; Ann. Cas. 1915C, 1182.

Original application for Writ of Prohibition by the State on the relation of John Samlin against the District Court of the Sixteenth Judicial District, in and for the County of Custer, and S. D. McKinnon, a Judge thereof, to stay further action in a search-warrant proceeding instituted under the Prohibition Enforcement Act. Peremptory writ issued.

*Mr. Frank Hunter, Mr. Will Truscott* and *Mr. Daniel L. O'Hern,* for Plaintiff, submitted a brief; *Mr. Hunter* argued the cause orally.

Citing, on the principal question involved: *State* v. *Peterson and Romano* (Wyo.), 194 Pac. 342; 19 Ency. Pl. & Pr. 327; 25 Am. & Eng. Ency. of Law, 147; *Ripper* v. *United States,* 178 Fed. 24, 101 C. C. A. 152; *United States* v. *Tureaud,* 20 Fed. 621; *United States* v. *Rykowski,* 267 Fed. 866.

*Mr. Wellington D. Rankin,* Attorney General, *Mr. L. A. Foot,* Assistant Attorney General, *Mr. W. C. Packer* and *Mr. C. A. Spaulding,* for Defendants, submitted a brief; *Mr. Spaulding* argued the cause orally.

From the decisions cited below it is apparent that this court is firmly committed to the doctrine that an affidavit upon information and belief satisfies the provision of section 7, Article III, of the state Constitution. It cannot be that the right of a citizen to be secure in his property is to be more highly regarded than that he be secure in his person. Therefore, whatever will suffice to satisfy the constitutional provision with reference to security from arrest will satisfy it with reference to searches and seizures of personal property. (*State* v. *McCaffery,* 16 Mont. 33, 40 Pac. 63; *State ex rel. Nolan* v. *Brantly,* 20 Mont. 173, 50 Pac. 410; *State* v. *Clancy,* 20 Mont. 498, 52 Pac. 267; *State* v. *Shafer,* 26 Mont. 11, 66 Pac. 463.)

The Prohibition Enforcement Act of this state was largely taken from the law on the subject enacted in the state of

Washington. In the case of *State ex rel. Hodge* v. *Gordon,*
95 Wash. 289, 163 Pac. 772, the supreme court of that state
had occasion to construe section 11, Chapter 2, of the Laws
of 1915, practically identical with section 7 of Chapter 143
of the Laws of 1917. The affidavit there under considera-
tion merely stated that the affiant had probable cause to be-
lieve, and in fact did believe, that in violation of the laws
of the state of Washington intoxicating liquors were being
manufactured, sold, *etc.*, in and upon certain premises, par-
ticularly describing them. The affidavit was held sufficient,
citing the cases of *Rose* v. *State,* 171 Ind. 662, 17 Ann. Cas.
228, 87 N. E. 103; *Lowrey* v. *Gridley,* 30 Conn. 450; *Gray* v.
*Kimball,* 42 Me. 299; *State* v. *Nowlan,* 64 Me. 531.

A careful reading of the case of *State* v. *Peterson and
Romano* (Wyo.), 194 Pac. 342, is clearly distinguishable from
the case at bar. There the law provided that the complaint
is to be made, not to a judge of the district court, but to the
prosecuting attorney or the prohibition commissioner of the
state, and that if either of such officers deemed the showing
good and sufficient, he should, upon his own complaint, pre-
sent the matter to a court of competent jurisdiction, and
such court should immediately issue its warrant to search the
premises described. The court properly held that this was
an attempted delegation of judicial functions to the prose-
cuting attorney and prohibition commissioner not warranted
under the Constitution of that state, and that it was com-
pelling a judicial officer or court to issue a search-warrant
without such officer or court finding judicially probable cause
therefor. The case is clearly not an authority in this juris-
diction. It distinctly repudiates the doctrine announced in
*Rose* v. *State, supra,* and the various decisions cited therein,
on the ground that the courts of the states rendering them
were committed to the doctrine that an affidavit on informa-
tion and belief suffices to sustain an information for the
arrest of a person charged with a criminal offense, and spe-
cifically directs attention to the fact that that doctrine does

not obtain in Wyoming. As stated above, that doctrine obtains in Montana.

But, without regard to the above, this court in *State ex rel. Prato* v. *District Court,* 55 Mont. 560, 179 Pac. 497, had under consideration a complaint stating that the affiant had probable cause to believe, and did believe, that intoxicating liquors were kept in a place certain, and that such liquors had been and were intended to be sold. It was there held that the complaint sufficed to permit confiscation and a judgment of forfeiture.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

Original application for a writ of prohibition directed to the district court of Custer county and to Honorable S. D. McKinnon, one of the judges thereof, to stay further action in a search-warrant proceeding instituted by one R. B. Hayes, under the provisions of Chapter 143 of the Session Laws of 1917, commonly called the Prohibition Enforcement Act.

On February 11 of this year Hayes filed a "complaint" in the district court of Custer county, the part of which material here is the following: "State of Montana, County of Custer,—ss: R. B. Hayes, being first duly sworn, deposes and says: That he has probable cause to believe, and does believe, that on the 5th day of February, A. D. 1921, intoxicating liquors were and have been ever since said date, and still are possessed, kept and disposed of and unlawfully introduced into the state of Montana by the said defendant [relator] and other persons, to affiant unknown, at a place," *etc.,* describing it as situate in Miles City. It concluded with a prayer for the issuance of a warrant to search the premises.

The defendant judge issued the warrant, which was put in the hands of Martin Golden, chief of police of Miles City, for execution. This he did by a search of the premises de-

scribed, and found there a quantity of whisky in bottles, which he seized, certifying in his return that he held the same in his possession, subject to the order of the court. He further certified that, having found no one in possession of the whisky, he posted a copy of the warrant on the door of the garage on the premises in which the whisky was found. On February 19 the judge made an order fixing March 3, at 10 o'clock A. M., as the time for a hearing to determine whether the whisky should be adjudged forfeited. A copy of the order was served on the relator. On that date he appeared by counsel and moved the court to quash the warrant and to order the whisky forthwith returned to the premises and to his possession, on the ground, among others, that the issuance of said alleged warrant was and is without and in excess of jurisdiction, because in violation of the provisions of the Fourth and Fifth Amendments to the Constitution of the United States; of section 7 of Article III of the Constitution of Montana; of sections 7 and 8 of the Prohibition Enforcement Act, and of the sections of the Revised Codes providing for the issuance of search-warrants. The motion was denied and the hearing was continued to May 9 at 10 o'clock A. M. Thereupon application for the writ was made to this court. An alternative writ was issued and made returnable for hearing on March 14. The defendants appeared by counsel and moved that the writ be quashed and the application dismissed on the ground that upon the facts stated in the complaint the relator is not entitled to relief. The application was thereupon submitted for decision on the merits.

It will be noted that the statement in the complaint is that [1] "he" [affiant] has probable cause to believe, and does believe, that on the fifth day of February, A. D. 1921," *etc.* The ultimate question submitted for decision is whether this statement, in the form of a conclusion by the affiant, though under oath, was sufficient to give the court or judge jurisdiction to issue the search-warrant. The solution of this

question depends upon the meaning of the section of our state Constitution prohibiting unreasonable searches and seizures, upon which the relator relies, and the provisions of law on the subject enacted in pursuance of it.

Consideration of the scope and application of Amendments [2] 4 and 5 of the Constitution of the United States is not pertinent. It is well settled that the prohibitions embodied in them are not limitations upon the power of the several states, but operate exclusively upon the delegated powers of the federal government. It is not necessary here to do more than call attention to some of the decisions of the supreme court of the United States which have discussed them and defined their application. (*Barron* v. *City of Baltimore,* 7 Pet. (U. S.) 243, 8 L. Ed. 672; *Fox* v. *Ohio,* 5 How. (U. S.) 410, 434, 12 L. Ed. 213; *Smith* v. *Maryland,* 18 How. (U. S.) 71, 76, 15 L. Ed. 269; *Withers* v. *Buckley,* 20 How. (U. S.) 84, 90, 15 L. Ed. 816; *Twitchell* v. *Commonwealth,* 7 Wall (U. S.) 321, 327, 19 L. Ed. 223; *United States* v. *Cruikshank,* 92 U. S. 542, 23 L. Ed. 588; *Weeks* v. *United States,* 232 U. S. 383, Ann. Cas. 1916C, 1177, L. R. A. 1915B, 834, 58 L. Ed. 652, 34 Sup. Ct. Rep. 341 [see, also, Rose's U. S. Notes].) Indeed, the rule announced in these cases applies to all the amendments, unless a contrary purpose is clearly expressed or implied by the terms in which they are couched. (*United States* v. *Cruikshank, supra.*)

The provision of our state Constitution referred to is: "The people shall be secure in their persons, papers, homes and effects, from unreasonable searches and seizures, and no warrant to search any place or scize any person or thing, shall issue without describing the place to be searched, or the person or thing to be seized, nor without probable cause, supported by oath or affirmation, reduced to writing."

The general provisions relating to search-warrants are sections 9676 to 9696 of the Revised Codes. Section 9677 enumerates the grounds upon which they may issue. The first subdivision of this section applies to cases where prop-

erty has been stolen or embezzled; the second to cases where property has been used as a means of committing a felony; the third to cases where property is in the possession of any person who intends to use it as a means of committing a public offense or is in possession of another to whom he may have delivered it for the purpose of concealing it or preventing its being discovered.

Sections 9678, 9679, 9680 and 9681 provide: "A search-warrant cannot be issued but upon probable cause, supported by affidavit, naming or describing the person, and particularly describing the property and the place to be searched." (Sec. 9678.) "The magistrate must, before issuing the warrant, examine on oath the complainant and any witnesses he may produce and take their depositions in writing and cause them to be subscribed by the parties making them." (Sec. 9679.) "The depositions must set forth the facts tending to establish the grounds of the application or probable cause for believing that they exist." (Sec. 9680.) "If the magistrate is satisfied of the existence of the grounds of application or that there is probable cause to believe their existence, he may issue the warrant. * * * " (Sec. 9681.)

Section 7 of the Prohibition Enforcement Act (Laws 1917, p. 241) declares: "If, upon the sworn complaint of any person, it shall be made to appear to any judge of the district court that there is probable cause to believe that intoxicating liquor is being manufactured, sold, exchanged, given away, *etc.*, * * * such judge shall, with or without the approval of the county attorney, issue a warrant directed to any peace officer in the county and commanding him to search the premises designated and described in such complaint and warrant and to seize all intoxicating liquors there found, together with the vessels in which they are contained," *etc.*

We shall not undertake to enter into a detailed, discussion [3] of the reasons, from a historical point of view, which prompted the incorporation in the federal Constitution of a

specific guaranty against unreasonable searches and seizures, nor why, though couched in somewhat varying terms, it appears in the constitutions of the several states. It is sufficient to say that when the colonies had gained their independence and were engaged in establishing the federal and the several state governments under written constitutions, they deemed it wise to incorporate in them in crystallized form the principles laid down as a part of the English Constitution by Lord Camden in his decision in the case of *Entick* v. *Carrington,* 19 St. Tr. 1030, and make them applicable to all invasions on the part of any of the several governments or any of their employees, of the sanctity of the home of a citizen, his personal security, personal liberty and private property where there is not probable cause to believe that his rights in this behalf have been forfeited by his own criminal conduct. As new states were formed from time to time, they also incorporated the guaranty in their constitutions, until now it is found, in some form, in those of all the states.

Speaking of the Fourth Amendment to the Constitution of the United States, Mr. Justice Day, in *Weeks* v. *United States,* 232 U. S. 383, Ann. Cas. 1915C, 1177, L. R. A. 1915B, 834, 58 L. Ed. 652, 34 Sup. Ct. Rep. 341 [see, also, Rose's U. S. Notes], said: ''The effect of the Fourth Amendment is to put the courts of the United States and federal officials, in the exercise of their power and authority, under limitations and restraints as to the exercise of such power and authority, and to forever secure the people, their persons, houses, papers, and effects against all unreasonable searches and seizures under the guise of law. This protection reaches all alike, whether accused of crime or not, and the duty of giving to it force and effect is obligatory upon all intrusted under our federal system with the enforcement of the laws. The tendency of those who execute the criminal laws of the country to obtain conviction by means of unlawful seizures and enforced confessions, the latter often obtained after subjecting

accused persons to unwarranted practices destructive of rights secured by the federal Constitution, should find no sanction in the judgments of the courts which are charged at all times with the support of the Constitution and to which people of all conditions have a right to appeal for the maintenance of such fundamental rights.'' This forceful statement of the learned justice applies as well to the guaranty found in our own Constitution; for, except that the order in which the several clauses in it are arranged is different, it is expressive of the same fundamental principles and was intended to be equally as effective to prevent an' invasion of the rights of the citizen of the state under the guise of law by the state government or any of its officers. [4] Since it was intended to take away from the legislature the power to authorize an invasion of the rights of the citizen by a search of his home or a seizure of his person or property in any other case than it permits, it is to be strictly construed in his favor. On this subject the eminent author, Mr. Cooley, in his work on' Constitutional Limitations, has this to say: ''For the service of criminal process, the houses of private parties are subject to be broken and entered under circumstances which are fully explained in the works on criminal law, and need not be enumerated here. And there are also cases where search-warrants are allowed to be issued, under which an officer may be protected in the like action. But as search-warrants are a species of process exceedingly arbitrary in character, and which ought not to be resorted to except for very urgent and satisfactory reasons, the rules of law which pertain to them are of more than ordinary strictness; and if the party acting under them expects legal protection, it is essential that these rules be carefully observed. In the first place, they are only to be granted in the cases expressly authorized by law; and not generally in such cases until after a showing made before a judicial officer, under oath, that a crime has been committed, and that the party complaining has reasonable cause to suspect that the offender, or the property

which was the subject or the instrument of the crime, is concealed in some specified house or place. And the law, in requiring a showing of reasonable cause for suspicion, intends that evidence shall be given of such facts as shall satisfy the magistrate that the suspicion is well founded; for the suspicion itself is no ground for the warrant except as the facts justify it.'' (Page 429.)

To the same effect is the rule stated by the author of the text in volume 24 of Ruling Case Law, at page 704, as follows: ''This restriction was intended to operate on legislative bodies, so as to render ineffectual any effort to legalize by statute what the people expressly stipulated could in no event be made lawful; upon executives, so that no law violative of this constitutional inhibition should ever be enforced; and upon the judiciary, so as to render it the duty of the courts to denounce as unlawful every unreasonable search and seizure, whether confessedly without any color of authority, or sought to be justified under the guise of legislative sanction.''

While some of the courts do not adhere to the doctrine declared by these text-writers, it is, we think, supported by the weight of authority. (*Weeks* v. *United States, supra; People ex rel. Robert Simpson Co.* v. *Kempner,* 208 N. Y. 16, Ann. Cas. 1914D, 169, 46 L. R. A. (n. s.) 970, 101 N. E. 794; *State* v. *Peterson and Romano* (Wyo.), 194 Pac. 342; *Johnston* v. *United States,* 87 Fed. 187, 30 C. C. A. 612; *United States* v. *Tureaud,* 20 Fed. 621; *State* v. *Gleason,* 32 Kan. 245, 4 Pac. 363; *State* v. *McGahey,* 12 N. D. 535, 97 N. W. 865; *State* v. *Patterson,* 13 N, D. 70, 99 N. W. 67; *Chipman* v. *Bates,* 15 Vt. 51, 40 Am. Dec. 663; *Kniseley* v. *Ham,* 39 Okl. 623, 49 L. R. A. (n. s.) 770, 136 Pac. 427; *Commonwealth* v. *Leddy,* 105 Mass. 381; 24 R. C. L. 767.)

The exact question presented here has never before arisen [5] in this state. The rule announced in the foregoing cases, however, was recognized and adverted to by this court in the cases of *State ex rel. Streit* v. *Justice Court,* 45 Mont.

59 Mont.] State ex rel. Samlin v. District Court. 611

⌊59 Mont. 600.⌉

375, 48 L. R. A. (n. s.) 156, 123 Pac. 405, and *State* v. *Malarky*, 57 Mont. 132, 187 Pac. 635. Under this doctrine, the facts upon which the application is made must be stated under oath, and the magistrate to whom it is presented must determine their sufficiency without reference to the opinion or belief of the applicant. A warrant issued upon a conclusion of the applicant, without any facts stated in the application upon which the judicial officer to whom it is addressed may form his own conclusion, is not a showing of "probable cause supported by oath or affirmation" within the meaning of the guaranty. The legislature, in enacting the provisions [6] of the Codes quoted *supra*, gave its construction to the guaranty, and this construction is strongly persuasive even without the authorities cited *supra*, against the validity of the proceedings under consideration. These sections declare (1) that a search-warrant cannot be issued but upon probable cause supported by affidavit; (2) that the magistrate, before granting it, must examine on oath the complainant (affiant) and any witnesses he may produce, and take their depositions in writing; (3) that the depositions must set forth the facts tending to establish the grounds of the application or probable cause, and (4) that if the magistrate is thereupon satisfied of the existence of the grounds of the application,—that is, that there is probable cause to believe that they exist,—he must issue the warrant. These provisions embody in substance the rule laid down in his text by Mr. Cooley, and the conclusion, it seems, cannot be avoided that in formulating them the legislature had it in mind. Since they are the only ones in our Codes prescribing a procedure for the issuance of a search-warrant, and since the warrant can be issued only under the authority of law, it is manifest that a warrant could not lawfully be issued in this state at all but for these provisions. In enacting the Prohibition Enforcement Act, the legislature manifestly did not intend to amend or modify these general provisions. The excerpt from section 7 of the Act *supra*, authorizes the district judge to issue the warrant if it shall be made to ap-

pear to him that there is probable cause to believe that intoxicating liquor is being manufactured, sold, *etc.* In enacting it the legislature must have had in mind the general provisions of the Codes, for it did not attempt to lay down any procedure, and it expressly recognized the necessity that the district judge, acting as the magistrate, should determine the question of the existence or nonexistence of probable cause, and issue or refuse to issue the warrant accordingly. The Act, so far as it relates to the issuance of such warrants, is *in pari materia* with the provisions of the Codes on the same subject and must be construed accordingly. The power of the district judge in this behalf is, therefore, the same as that of the magistrate and is subject to exactly the same limitations.

That the word "complaint" appears in the Act, instead of the word "affidavit" used in section 9678, *supra,* does not imply that a less stringent rule may be observed by the district judge, for the requirement is "if upon the sworn complaint of any person, it *shall be made to appear to any judge* of the district court that there is probable cause to believe that intoxicating liquor is being manufactured * * * , such judge shall issue a warrant," *etc.* In other words, there must be a foundation in the facts presented to him for the conclusion that probable cause exists, or he has nothing before him to bring his power into activity.

Our conclusion is that the proceeding in the district court was void *ab initio* and that the writ should be made peremptory.

Counsel have devoted considerable space in their briefs to [7] a discussion of the question whether an affidavit or complaint made upon information and belief meets the requirements of the guaranty of the Constitution and of the statute *supra.* Strictly speaking, this question does not arise in this case. Under the provisions of the Codes *supra,* however, clearly there must be submitted to the judge or magistrate something more than statements based upon hearsay or rumor. By section 8 of the Prohibition Enforcement Act,

the complaint or affidavit upon which the warrant is issued and the possession of the intoxicating liquors seized under it are made *prima facie* evidence of the contraband character of the liquors, implements, *etc.*, used in connection with it. If nothing more than statements resting upon hearsay and rumor is required as a basis for the issuance of the warrant, mere hearsay or rumor is thus made sufficient to show that the possession of the liquors, *etc.*, is in violation of the Act, however lawful such possession may have been, and casts the burden upon the possessor to rebut the *prima facie* case thus made against him, under the pain of suffering forfeiture of his property. In view of the provisions of the Codes *supra,* we may not conclude that in enacting the Prohibition Enforcement Act the legislature intended that it should authorize such a result. For a discussion of this subject and an extensive review of the authorities, reference is made to the case of *State* v. *Peterson and Romano, supra.*

In his petition relator asks that, if the writ is issued, it [8–9] include as a part of the relief granted an order that the whisky seized under a warrant be returned to him. We think that he is entitled to this relief. In proceeding under the warrant, the chief of police committed a trespass by an invasion of the rights guaranteed to the relator by the Constitution. The seizure of the whisky was an unlawful act. The officer may not be permitted to retain it for any purpose. It is well settled that articles wrongfully taken from one accused of crime may be used as evidence against him upon the trial, though objection is made that the prosecution obtained possession of them unlawfully. If they are in other respects competent and material, the trial court will not pause to inquire by what means they came into the possession of the prosecution. (*State* v. *Fuller,* 34 Mont. 12, 9 Ann. Cas. 648, 8 L. R. A. (n. s.) 762, 85 Pac. 369; *People ex rel. Robert Simpson Co.* v. *Kempner, supra; United States* v. *Weeks, supra; State* v. *Marxhausen,* 204 Mich. 559, 171 N. W. 557; *State* v. *Peterson and Romano, supra.*) This question will be left to be determined in an independent

action brought by the accused against the one who wrongfully secured possession. When, however, the question is raised before the trial, by a direct proceeding instituted to test the question as to the legality of the means by which possession of the articles has been secured, it then becomes the duty of the court to direct return of them to the accused, if it determines that unlawful means have been employed to secure possession. In 10 R. C. L., at page 933, the rule is stated as follows: "The principle underlying the decisions admitting the evidence is that an objection to an offer of proof made on the trial of a cause raises no other question than that of the competency, relevancy and materiality of the evidence offered, and that consequently the court, on such an objection, cannot enter on the trial of a collateral issue as to the source from which the evidence was obtained. But since there is a right, there must of necessity be a remedy, and the remedy is to be found in the making of a timely application to the court for an order directing the return to the applicant of the papers unlawfully seized. On such an application, the question of the illegality of the seizure may be fully heard, and if the court erroneously refuses to order a return of the papers, and thereafter receives them in evidence against the applicant over his objection, it is an error for which a judgment of conviction must be reversed." The author refers specifically to papers, but the rule stated applies to any kind of personal property. (*State* v. *Peterson and Romano, People ex rel. Robert Simpson Co.* v. *Kempner, State* v. *Marxhausen, supra.*) There is some conflict in the authorities upon the subject, but in our opinion the rule as stated in the text quoted is based upon the better reason and meets with our approval.

It is ordered that a peremptory writ issue, and that the district court order the chief of police, who has the whisky in his possession, to return it to the possession of the relator.

*Writ issued.*

ASSOCIATE JUSTICES REYNOLDS, COOPER, HOLLOWAY and GALEN concur.