WESTOVER, RESPONDENT, v. CALDER ET AL., APPELLANTS.

(No. 4,779.)

(Submitted April 20, 1922.  Decided July 15, 1922.)

[209 Pac. 306.]

Conversion—Intoxicating Liquors—Illegal Seizure and Destruction — Measure of Damages — Exemplary Damages — When not Allowable.

Conversion—Measure of Damages.
  1.  Where the property in controversy in an action for conversion has a value peculiar to the owner, its actual value to him, and not the market value, is the measure of compensation.
Same—Intoxicating Liquors—Illegal Seizure and Destruction—Peace Officers—Justification Under Statute—Liability of Persons Aiding Officer.
  2.  Where a peace officer makes a seizure of intoxicating liquors in an entire disregard of the statutory provisions relating thereto, he may not defend his conduct under them, and persons who upon his call assist him in the seizure do so at their peril.
Same—Exemplary Damages—When not Warranted.
  3.  To justify an award of exemplary damages, there must exist an element of fraud, malice, evil intent, or oppression; hence where in an action against a policeman and others for damages for the illegal seizure and destruction of a large quantity of whisky the evidence was not sufficient to show malice or ill will on the part of the defendants, an award of $5,000 as vindictive damages was unwarranted, and judgment ordered modified by eliminating therefrom such amount, and, as so modified, judgment affirmed.

Appeals from District Court, Yellowstone County; A. C. Spencer, Judge.

ACTION by Edward Westover against W. L. A. Calder and others.  From a judgment for plaintiff and an order overruling defendants' motion for new trial, they appeal.  Order overruling motion for new trial affirmed and cause remanded, with directions to eliminate from judgment $5,000 vindictive damages, and judgment affirmed as modified.

2.  Constitutional guaranties against unreasonable searches and seizures as applied to a search for or seizure of intoxicating liquor, see note in 13 A. L. R. 1316.

*Messrs. Nichols & Wilson,* for Appellants, submitted a brief; *Mr. Edmund Nichols* argued the cause orally.

The question of ownership of the whisky was directly in issue and was one of the ultimate facts to be found by the jury. The circumstances related by the plaintiff and the witness Westover as to the purchase were of such a character that from them the jury might have concluded that the plaintiff never became the owner. Under this state of facts it was clearly incompetent for this witness to express his opinion on the subject. It may be conceded that under some circumstances a witness might be permitted to testify as to ownership, but this is where the fact is collateral or is not directly in issue. (See *Brown* v. *Cloud County Bank,* 2 Kan. App. 352, 42 Pac. 593; *Winslow* v. *Glendale L. & P. Co.,* 164 Cal. 688, 130 Pac. 427; *Hite* v. *Stimmell,* 45 Kan. 469, 25 Pac. 852; *Farmer* v. *Brokaw,* 102 Iowa, 246, 71 N. W. 246.)

A communication between an attorney and a person other than his client, or an agent of his client, is not privileged, although it may relate to the client's business, and although the person making the statement may be a witness for the client. (40 Cyc. 2363; *People* v. *Heart,* 1 Cal. App. 166, 81 Pac. 1018.) "The burden is upon the party seeking to suppress the evidence to show that it is within the terms of the statute." (40 Cyc. 2362; *Earle* v. *Grout,* 46 Vt. 113; Weeks on Attorneys, 147.) "Nor does the rule apply to conversations had between the attorney and a third party, or between the third parties in the presence of the attorney and client." (*Sharon* v. *Sharon,* 79 Cal. 633, 22 Pac. 26, 131; *Mobile etc. Ry. Co.* v. *Yeates,* 67 Ala. 164; *Levers* v. *Van Buskirk,* 4 Pa. St. 309, 316; 10 Ency. of Evidence, 288.)

As the rule tends to prevent a full disclosure of the truth, it should be strictly construed and limited to cases falling within the principle on which it is based. (*Satterlee* v. *Bliss,* 36 Cal. 489; *Phillips* v. *Chase,* 201 Mass. 444, 131 Am. St.

Rep. 406, 87 N. E. 755; *Hyman* v. *Grant,* 102 Tex. 50, 112 S. W. 1042; 40 Cyc. 2362.)

Among the defenses urged was that the defendant Keifer was acting as a peace officer and had called upon his codefendants to assist him in making the arrest and seizure of liquors, and that in their destruction the officer and defendants assisting all acted under a process apparently valid. Instructions embodying these defenses were requested by defendants and all of them were refused. This is not an action for damages for false arrest. The arrest was one of the acts going to make up the alleged conversion. The court in its instruction No. 4 informed the jury that the officer had no legal right whatever to attempt or to arrest plaintiff. Even if this were correct as a matter of law, yet if the officer in good faith believed and had probable cause to believe the plaintiff was in the act of violating the liquor laws of the state, the arrest in itself was justified. If the officer was justified, then defendants are also justified, if in good faith they assisted at the officer's request. Whether there was reasonable and probable cause to so believe was, of course, a question for the jury. (19 Cyc. 350–352.)

This verdict is excessive, and is the result of passion and prejudice. This is shown most clearly by the amount of the verdict. In the first place, to say that whisky was fairly and reasonably worth five dollars a pint is absurd; and, second, that $5,000 as exemplary damages exceeds any reasonable sum which might properly be awarded, conceding for the moment that malice could be implied. The rule is clearly stated by Chief Justice Brantly in *De Celles* v. *Casey,* 48 Mont. 568, 576, 139 Pac. 586.

*Mr. E. E. Enterline* and *Mr. James L. Davis,* for Respondent, submitted a brief; *Mr. Enterline* argued the cause orally.

The undisputed · evidence in this case discloses that the plaintiff was in possession of the property in controversy at the time it was taken from him by the defendants. No evi-

dence whatever was introduced on behalf of the defendants showing any right of possession or ownership in defendants. Under all the authorities bare possession of personal property is sufficient proof of ownership against every person failing to show a better title of right or possession. (Bowers on the Law of Conversion, secs. 445–448; 38 Cyc. 2077, 2078; *Stitt* v. *Namakan Lumber Co.*, 95 Minn. 91, 103 N. W. 707.) Conceding for the sake of argument that plaintiff's brother had no right to testify concerning the ownership of the property in controversy, the uncontradicted evidence discloses that plaintiff was the owner and in possession and entitled to the possession of the property in controversy. The error, if any, committed by the trial court in the regard did not affect the substantial rights of the defendants and must therefore be disregarded. (*Montana Livestock etc. Co.* v. *Stewart*, 58 Mont. 221, 190 Pac. 985.)

The possession of the liquor in controversy by the plaintiff was in no sense illegal, and no evidence was introduced by the defendants tending to establish or prove that plaintiff's possession of the same was illegal. Under these circumstances the plaintiff had a property right in the liquor in controversy, was entitled to the protection of the law, and had a right to maintain trover for the conversion of the same. (23 Cyc. 333, 334; 15 R. C. L., Intoxicating Liquors, sec. 186; *State* v. *Snell*, 99 Wash. 195, 169 Pac. 320.)

Where property converted by the defendant consisted of articles for personal use and therefore have no market value, the measure of damage is the reasonable value to the owner at the time of conversion. (*Erie R. Co.* v. *Steinberg*, 94 Ohio St. 189, Ann. Cas. 1917E, 661, L. R. A. 1917B, 787, 113 N. E. 814; *St. Louis, I. M. & S. R. Co.* v. *Dague*, 118 Ark. 277, Ann. Cas. 1917B, 577, and note 581, 176 S. W. 138.) The general rule as laid down by the authorities seems to be that the measure of damages for the destruction or conversion of personal property, if the property has no market value at the time and place of conversion either because of

[64 Mont. 264.]

its limited production or because it is of such a nature that there can be no general demand for it and it is more particularly valuable to the owner than anyone else, then it may be estimated with reference to its value to him. (*Swank* v. *Elwert*, 55 Or. 487, 105 Pac. 901; *Woodworth* v. *Hascall*, 59 Neb. 124, 80 N. W. 483; *Vaughn* v. *Wright*, 139 Ga. 736, Ann. Cas. 1914B, 821, and note 823, 45 L. R. A. (n. s.) 785, 78 S. E. 123.) In this case the plaintiff testified what he paid for the liquor and what its reasonable value was to him. The liquor in question having no market value, the testimony given by the plaintiff was clearly admissible under the foregoing authorities cited and discussed. This court has held that the original cost price of an article is some evidence of value. (*Osmers* v. *Furey*, 32 Mont. 581, 81 Pac. 345; *Columbus State Bank* v. *Erb*, 50 Mont. 442, 147 Pac. 617.)

The evidence clearly establishes the fact that the only purpose of the defendants was to secure the intoxicating liquors and not to enforce the ordinances of the city of Laurel or the laws of the state. It matters not whether they destroyed liquor or tea; their acts were unjustifiable, and they were all guilty of malice as that term is defined by this court. (*Moelleur* v. *Moelleur*, 55 Mont. 30, 173 Pac. 419.) In the light of the evidence in this case and under well-considered cases, we do not think that the exemplary damages allowed were excessive, and the verdict should not be disturbed on that account. (*Jones* v. *Shannon*, 55 Mont. 225, 175 Pac. 882; *Scott* v. *Times-Mirror Co.*, 181 Cal. 345, 12 A. L. R. 1007, 184 Pac. 672.)

MR. JUSTICE COOPER delivered the following opinion.

This is an action to recover the value of twenty-one cases of whisky and damages for its seizure. Keifer, the principal defendant, was night policeman of the city of Laurel, Calder, its city attorney, and Settergren and Hanner private individuals who responded to the request of Keifer to assist him. The complaint alleges that the ownership of the liquors was

in the plaintiff, that its value was $2,100, and that it was by defendants maliciously and illegally converted. These averments the answer denies, pleads its purchase for illegal sale and the maintenance of a nuisance under Chapter 130 of the Session Laws of 1917; that it was taken lawfully by Keifer as a police officer, and those assisting him, and, later, upon the judicial order of E. L. Fenton, a justice of the peace of Laurel township, under Keifer's direction destroyed. The issues involve title to the property, its value, and the illegality of its seizure and destruction. For the purpose of taking it from plaintiff, the four defendants, Keifer, Calder, Settergren and Hanner, at about 10:30 in the night of December 22, 1919, left the city of Laurel in an automobile owned by Settergren, stopped the car in which the plaintiff and three others were riding, at a distance of about half a mile beyond the corporate limits of Laurel, ordered them to get out of the car, took the liquor into their possession, and stored it in the city jail of Laurel. None of the persons in the party were taken into custody upon a complaint and warrant charging them with a crime, although R. L. Westover was told he was under arrest. At the close of the evidence the defendants moved the court to direct verdicts in their favor. This the court declined to do, and submitted the case to the jury for determination. A general verdict in the sum of $7,175 was returned. This appeal is from the judgment and an order overruling the motion for a new trial.

The defendants have specified twelve errors as grounds for the reversal of the judgment. Such of them as need be considered will be grouped and disposed of in the order presented in the briefs.

The first is addressed to the ruling of the court in permitting R. L. Westover to answer the direct question as to who was the owner of the liquor after the purchase price had been paid on the night of December 22, 1919. He had already described the packages containing the whisky, and detailed the conversations between the parties culminating in

the purchase of the liquor from a man he knew as Baker, and stated that he witnessed payment of the purchase price and its transfer to the car driven by him. The objection interposed was that it called for a conclusion of the witness. While the statement that his brother was the owner might properly be termed an opinion, it was made after the witness had detailed the acts and circumstances attending the making of the bargain, and, if believed, was enough in substance to go to the jury as tending to prove the ultimate fact of ownership. It was therefore harmless, if error at all.

The next ruling complained of is the exclusion of the evidence of Attorney H. C. Crippen, offered to impeach the statement of R. L. Westover concerning the ownership of the whisky. Mr. Crippen testified that he knew one Blackie Barlow, and also one Calgary Red, sometimes known as Red Archer; that the two men were associated together in business; that Blackie Barlow called upon him at his office, on or about the 23d or 24th of December, and consulted him in a professional capacity, and that the relation of attorney and client then existed between himself and Barlow, but not between himself and R. L. Westover; that about the 23d or the 24th of December, 1919, in the office of Mr. Crippen, where he had gone in response to the request of the latter, he (Westover) stated that Blackie Barlow had hired him to haul the whisky; that Barlow was its owner; and that he then made no claim that his brother was its owner. The defendants' objection to this was that the evidence was incompetent, irrelevant, immaterial, without proper foundation, and a privileged communication. The evidence, if admitted, would have had an impeaching effect upon the statement of R. L. Westover concerning the ownership of the whisky. It was competent, because the relation of attorney and client did not exist between Crippen and Westover, and admissible for the purpose of enabling the jury to pass upon the credibility of the witness. In view of the pleadings and the facts in the case, however, I think the rejection of the evidence was

unsubstantial error. While the complaint alleges ownership in
the plaintiff (and that is denied generally in the answer), it is
affirmatively alleged that the plaintiff was in possession of the
property in violation of law, in that he was transporting it
for the purpose of illegal sale and delivery, under the pro-
visions of Chapters 130 and 175 of the Fifteenth Session
Laws. Possession of personal property, coupled with the right
to sell and deliver, is at least *prima facie* evidence of owner-
ship. The assumption of power, without process, did not
clothe defendants with authority to take the goods from the
plaintiff. The exercise by defendants of dominion over plain-
tiff's property in defiance of his rights was conversion. (2
Cooley on Torts, 859.) For the purposes of this case, to my
mind, the implication of ownership was clear enough to dis-
pose of that issue.

The next important exception was to the ruling allowing the
plaintiff to state the value of the liquor to him for his own
[1]    use. It is the law that when property has a value pe-
culiar to the owner, its actual value to him, and not the
market value, is the measure of compensation for its conver-
sion. (Bowers on Conversion, sec. 659.) It had a personal
value to the plaintiff, according to his needs and the purposes
for which it might be utilized, although its value may have
been trifling to others. It being impossible to lay down a
fixed rule by which compensation for its loss could be de-
termined, that question was of necessity left to the discre-
tion of the jury.

The specifications next discussed in the briefs deal with the
correctness of the court's instructions 4, 5 and 6, and the
refusal of the court to charge the jury as proposed in de-
fendants' tendered instructions 2, 4, 6, 7, 8, 9 and 10. The
[2]    charge covered by instructions numbered 4, 5 and 6, in
substance, was this: That the defendants had no legal right
to take the property from the possession of the plaintiff, and
that all the participants therein were wrongdoers and tres-
passers; that Calder, Settergren and Hanner were not obliged

to assist Keifer at his call, and that in so doing they became equally liable with him for the detriment caused thereby, namely, the value of the property at the time of its conversion, with interest at eight per cent per annum; and that, before the plaintiff could recover anything above the fair value of the property, they must find by a preponderance of the evidence that the defendants acted maliciously. By its instruction No. 10, the court advised the jury that in determining the question whether the defendants acted unlawfully, willfully, wantonly; oppressively and maliciously, they had a right to consider all the facts and circumstances proven, and to take into consideration all the acts and declarations of the defendants prior and subsequent to the acts complained of, and that in determining the measure of damages to be awarded they should take into consideration the cost price of the property.

The argument advanced against the giving and refusing of these instructions is that by virtue of the provisions of Chapters 130, 143 and 175 of the Fifteenth Session Laws it was the right and duty of Keifer, as a police officer, "to place all these parties under arrest and to seize the liquors." The quantity of liquor in their possession, and the fact that they were engaged in transporting so much, it is insisted, reflected the good faith of the defendants, furnished probable cause for the belief that their duty in the premises was to apprehend the parties and seize the liquor, and that Keifer was authorized by section 8261 of the Revised Codes of 1907 to call upon his codefendants to aid him in the undertaking. Such is not the law in this case. The plaintiff was entitled to the possession of the liquors until it could be shown that his right thereto had been forfeited by his own criminal misconduct. (*State ex rel. Samlin* v. *District Court,* 59 Mont. 600, 198 Pac. 362; *State* v. *Peterson,* 27 Wyo. 185, 13 A. L. R. 1284, 194 Pac. 342; *Youman* v. *Commonwealth,* 189 Ky. 152, 13 A. L. R. 1303, 224 S. W. 860.) As is said in the *Samlin Case,* the constitutional guaranty against un-

reasonable searches and seizures was intended to take from the legislature the power to authorize an invasion of the rights of the citizen by a search of his person or property, as was done in this instance, and must receive a construction in favor of the plaintiff whose person and property were invaded.

Chapter 130, among other things, declares all places where intoxicating liquors are manufactured, sold or given away in violation of law are common nuisances. It provides punishment for their maintenance, for their abatement, and the seizure and destruction of the liquors and fixtures. Section 4 of the Act makes it the duty of every officer authorized to make arrests, to seize all intoxicating liquors held for sale or delivery contrary to law, and to arrest the persons actually or apparently in possession or control of the property and the premises in which they are found. Section 5 deprives all persons owning or claiming to own any such intoxicating liquors, glasses, bottles, kegs, pumps, bars and other fixtures destroyed under authority of the Act, of any right of action against the person, or against the state, county or city for the value of the liquors or fixtures. Chapter 175 of the Laws of 1917, known as the Prohibition Act, forbids the introduction into, the manufacture of, and the giving, exchanging, bartering, selling and disposing of ardent spirits or intoxicating liquors within the state. The provisions of section 9 of Chapter 143, Laws of 1917, are *in rem,* and altogether independent of any criminal prosecution for the violation of the liquor laws. (*State* v. *Kelly,* 57 Mont. 123, 187 Pac. 637; *State* v. *Nielsen,* 57 Mont. 137, 187 Pac. 639.) ''It requires the officer, without a warrant, to arrest the offender and seize the liquor, vessels, fixtures and appurtenances, to take the offender before the court or judge, make complaint charging the offense committed, and furnish a particular description of the liquor and property seized and of the place where the same were seized. Thereupon the court or judge shall cause a warrant to issue directing the officer to hold in his possession the

seized property until it shall be discharged by process of law. The procedure shall then conform to the provisions of section 8." (*State ex rel. Neville* v. *Mullen*, 63 Mont. 50, 207 Pac. 634.)

Neither the nature nor the *quantum* of the information upon which the defendants acted is disclosed by the evidence. So far as the court is advised, they proceeded according to the dictates of their own minds, and without any facts upon which a court would determine whether they constituted "probable cause" according to statutory and constitutional authority. Keifer's evidence was that some time prior to December 22 he had learned "that the Westovers were out for some liquor"; that about 10 o'clock P. M. on December 22, he saw Bob Westover, the plaintiff's brother, going into the garage of one Mendenhall in Laurel; that he immediately asked Hanner "if he would go over and keep tab on him"; that Hanner left, and shortly thereafter returned and reported that Bob Westover had left in an automobile, and had gone toward the bridge which crosses the Yellowstone River, a distance of about half a mile beyond the corporate limits of the city of Laurel; that he told Settergren that he would like to have him "come along and bring his car"; that they "were going to try to catch a bootlegger"; that after making a like request of Calder, the city attorney, he in company with Calder, Settergren and Hanner, in Settergren's automobile, left the city of Laurel, and, proceeding in the direction taken by Westover, turned out the lights of the car, and stopped at the bridge where the seizure was made. In justification, Keifer testified that he arrested the men for transporting whisky; that he did not know where they got it; that he intended to arrest them because he thought they were bootlegging, taking whisky around and selling it; that he thought he was arresting Bob Westover for a violation of the ordinances of the city of Laurel; that "as a matter of fact they were doing nothing, except I saw liquor in the car at the time I attempted or did make the arrest"; that he did not

make any complaint in the police court because the other three fellows got away, and this fellow (R. L. Westover) claimed he had nothing to do with it, and through Calder's advice they were all let go. Calder's testimony was that the bridge at which the transaction took place was approximately half a mile from the corporate limits of the city of Laurel; that he was there assisting; that during the course of the evening he had advised Keifer that he was going to assist in the arrest if it was to be made, and if they found "booze" in the possession of the plaintiff and his companions, they were going to arrest them; that when they told them to "stick up their hands" they were morally certain that they had liquor; that they arrested them under section 4 of Chapter 130; that he could not testify that the liquors seized were held for sale—"didn't know whether they were or not." The evidence further shows that upon the execution of an order issued by the justice of the peace for the destruction of the liquor, it was found that tea had been placed in a large number of the bottles which had theretofore contained whisky.

In *State ex rel. Samlin* v. *District Court, supra,* it was expressly held that a warrant, issued upon the conclusion of the applicant, without any facts stated in the application upon which the judicial officer to whom it was addressed could form his own conclusion, is not a showing of probable cause supported by oath or affirmation within the meaning of the guaranty against illegal searches and seizures. In *State* v. *Bowker,* 63 Mont. 1, 205 Pac. 961, this court held that, as the law stood at the time of the happenings here involved, the district court alone had jurisdiction to make the order the justice of the peace assumed to make.

The purpose of the prohibition statutes is the suppression of the liquor traffic and the punishment of offenders against them. All officers assuming to execute the authority they confer are required to observe all lawful commands. One who seizes the property or arrests the person of another can only justify himself by a strict compliance with the require-

ments of such process or authority. If he fails to execute or return the process as thereby required, he may not, perhaps, in the strictest sense be said to become a trespasser *ab initio;* but he is often called such, for his whole justification fails, and he stands as if he had never had authority to take the property, and therefore appears to have been a trespasser from the beginning. Such is the holding of the supreme judicial court of Massachusetts in the following cases: *Brock* v. *Stimson,* 108 Mass. 521, 11 Am. Rep. 390, *Russell* v. *Hanscomb,* 15 Gray (Mass.), 166, and *Phillips* v. *Fadden,* 125 Mass. 198. In *Six Carpenters' Case,* 8 Coke, 146, it was held that the reason for holding a person acting under authority of law to be a trespasser *ab initio* through any after abuse of such power was that his subsequent illegality showed that he began with an unlawful intent. And generally it may be said that disobedience of a statute which authorizes the taking of property from another will remove the protection it would otherwise afford. In *Elder* v. *Morrison,* 10 Wend. (N. Y.) 128, 25 Am. Dec. 548, Chief Justice Savage, speaking for the court, said: "Whenever a sheriff or constable has power to execute process in a particular manner, his authority is a justification to himself and all who come to his aid; but if his authority is not sufficient to justify him, neither can it justify those who aid him. He has no power to command others to do an unlawful act; they are not bound to obey, neither by the common law nor the statute, and if they do obey it is at their peril. They are bound to obey when his commands are lawful, otherwise not. The only hardship in the case is, that they are bound to know the law. But that obligation is universal; ignorance is no excuse for anyone." To this effect, also, are *Mitchell* v. *State,* 12 Ark. 50, 54 Am. Dec. 253; *Bath* v. *Metcalf,* 145 Mass. 274, 1 Am. St. Rep. 455, 14 N. E. 133; *Williams* v. *De Lano,* 155 Mass. 10, 28 N. E. 1122; Broom's Legal Maxims, 271.

The charge in the complaint is a willful and malicious **[3]** trespass in seizing and taking the personal property of

[64 Mont. 264.]

the plaintiff with circumstances of aggravation, and averments of punitory damages. The acts are charged to have been committed by the defendants under pretended authority to proceed without a warrant, in defiance of law and the plaintiff's rights, amounting to oppression in office. The court so told the jury.

In order to justify an award of vindictive damages, there must exist an element of fraud, malice, evil intent or oppression which enters into and forms a part of the wrong. If the acts can be said to have been committed in the fair assertion of a supposed right, or in the discharge of a duty, there is then left no room for the award of punitive damages. "The tort is aggravated by the evil motive and on this rests the rule of exemplary damages." (*Milwaukee etc. R. Co.* v. *Arms,* 91 U. S. 493, 23 L. Ed. 374 [see, also, Rose's U. S. Notes].) In the absence of malice or abuse of process, or a desire to do injury, the damages should be compensatory only. Therefore, unless the evidence is in such condition that malice may be implied, the verdict in its entirety cannot be sustained. Mere deliberateness and unnecessary force or violence is not the test of punitive damages. (*Philadelphia, B. & W. R. Co.* v. *Green,* 110 Md. 43, 71 Atl. 986.) In the language of Chief Justice Pratt, in *Wilkes* v. *Wood,* Lofft, 19: "Damages are designed not only as satisfaction to the injured person, but likewise as a punishment to the guilty, to deter from any such proceeding for the future, and as proof of the detestation of the jury to the action itself."

Applying these tests to the evidence, unless the actions of the defendants attending the taking and destruction of the liquors were engendered by malice or ill will, they would not constitute such an invasion of the rights and privileges secured by the constitutional guaranties against unreasonable searches and seizures as will justify the imposition of vindictive damages. In our judgment, the evidence is not sufficient to warrant the allowance of vindictive damages.

The order overruling the motion for a new trial is affirmed, and the cause remanded, with directions to modify the judgment as of the date of its rendition by eliminating therefrom the sum of $5,000, and, as so modified, to stand affirmed, each party to pay his own costs.

ASSOCIATE JUSTICE HOLLOWAY concurs in the result reached.

MR. JUSTICE GALEN, Concurring Specially: I concur in the result reached. The basis for an award of exemplary damages in this case was the oppression used by the defendants, but in view of all of the facts and circumstances connected therewith an allowance of $5,000 is altogether too great. The rule with respect to the award and disallowance of exemplary damages has been defined by this court (*Luther* v. *Lee,* 62 Mont. 174, 204 Pac. 365; *Cornner* v. *Hamilton,* 62 Mont. 239, 204 Pac. 489); and while in my opinion some punishment would be proper in this instance by way of example, to deter others from interference with the sacred constitutional guaranties possessed by the plaintiff or another in like situation, yet it is impossible for this court on appeal to scale or proportion the allowance of punitive damages on any proper basis, considering all of the facts in this particular case. It is evident to me that passion and prejudice entered into the verdict of the jury in the award of damages made by it by way of punishment; however, it is my opinion that the ends of justice will be best subserved by affirming the judgment as to compensatory damages alone.

HONORABLE ROY E. AYERS, District Judge, sitting in place of MR. CHIEF JUSTICE BRANTLY, disqualified, concurs in the views expressed by MR. JUSTICE GALEN.

                                        *Modified and affirmed.*