STATE EX REL. KING, RELATOR, *v.* DISTRICT COURT ET AL., RESPONDENTS.

(No. 5,496.)

(Submitted March 8, 1924.   Decided March 29, 1924.)

[224 Pac. 862.]

*Writ of Prohibition—Intoxicating Liquors—Searches and Seizures—Void Search-warrant—Effect on Seizure—Suppression of Evidence—When Proper.*

Intoxicating Liquors—Search-warrant—Description of Premises—Essentials.
1. Where it is sought to search and seize property there must not be any obscurity or uncertainty; the warrant must be complete in itself and the description of the premises contained in the complaint cannot be made to aid that set forth in the warrant.

Same—Search-warrant—Indefinite Description of Premises—Seizure Illegal.
2. *Held,* that the description contained in a warrant authorizing an officer to search a dwelling-house upon a certain quarter-section of land "and all outbuildings" was too indefinite, where the owner claimed that there were three dwelling-houses upon the land and the state contended that there was but one dwelling and that the other

o

[70 Mont. 191.]

structures were bunkhouses and the like, and that a seizure of liquor, *etc.,* made in pursuance thereof was illegal.

Same—Searches and Seizures—Duty of Officers.

3. The protection granted by section 7, Article III, of the state Constitution, against unreasonable searches and seizures reaches all alike, whether accused of crime or not, and the duty of enforcing it is obligatory upon all entrusted with the enforcement of the law.

Same—Unlawful Searches and Seizures Unreasonable.

4. Every search and seizure which is not lawful and which is not conducted as the law prescribes is unreasonable.

Same—Search-warrant—Description of Premises—Extent of Accuracy.

5. To the end that any unnecessary or unauthorized invasion of the right of privacy may be avoided, a search-warrant should so accurately describe the premises as to leave the officer no discretion as to what is to be searched.

Same—Unlawful Search not Made Justifiable by What is Found.

6. A search which is unlawful in its inception is not made lawful by what the searching officer finds; hence seizure of liquor and other contraband articles under a void search-warrant could not be justified by the fact that they were found on the premises searched under it.

Same—Seizure of Articles not Mentioned in Search-warrant Unlawful.

7. Where a search-warrant authorized the seizure of intoxicating liquor together with the vessels containing the same and all implements, furniture, *etc.,* used for the purpose of violating the liquor law, the seizure of a large quantity of sugar, not shown to have been contraband, was unauthorized, entitling the owner to its return.

Same—Use of Articles Unlawfully Seized as Evidence—Suppression, When.

8. Where timely application was made to suppress their use as evidence in a criminal action pending against their owner because they were obtained by means of an unlawful search-warrant neither the liquor nor other articles seized, nor the evidence of their possession thus acquired, may be used against him.

Same—Seizure of Contraband Goods Under Void Search-warrant—Owner not Entitled to Return Thereof.

9. The presumption being that eighty-eight gallons of uncolored moonshine whisky, stills, *etc.,* seized under a void search-warrant, were contraband in which, under section 11070, Revised Codes of 1921, no property rights exist, the supreme court, on application for writ of prohibition to prevent their use as evidence against relator from whose premises they were taken under a void search-warrant, will not decree their return to him, but will leave him to his remedy at law, if any he have.

Same—Void Search-warrant—Officer Acting Thereunder a Trespasser.

10. An officer searching premises under an unlawful search-warrant is a trespasser against whom their owner has a right of action.

Original application for writ of prohibition by the State, on the relation of Robert F. King, against the District Court of

4. Constitutional guaranties against unreasonable search and seizures as applied to search for and seizure of intoxicating liquor, see notes in 3 A. L. R. 1514; 13 A. L. R. 1316.

the Fourth Judicial District in and for the County of Missoula, Theodore Lentz, Judge, and Dwight N. Mason, County Attorney of Missoula County. Writ issued.

*Mr. Chas. A. Russell*, for Relator, submitted a brief and argued the cause orally.

*Mr. Wellington D. Rankin*, Attorney General, and *Mr. Dwight N. Mason*, County Attorney of Missoula County, submitted a brief; *Mr. Mason* argued the cause orally.

MR. CHIEF JUSTICE CALLAWAY delivered the opinion of the court.

This is an original application by Robert F. King for a writ of prohibition directed to the district court of Missoula county and to Honorable Theodore Lentz, one of the judges thereof, and to Dwight N. Mason, county attorney of that county, to stay further action in a search-warrant proceeding instituted by one Vean Mosher under what are commonly known as the prohibition enforcement laws. The respondents have appeared by answer.

In view of the conclusion at which we have arrived we do not deem it necessary to consider an interesting question respecting the sufficiency of the "probable cause" underlying the issuance of the search-warrant. Suffice it to say that upon a complaint filed by Mosher, fortified by a "deposition" given by him, a justice of the peace issued the search-warrant. In the complaint for the search-warrant, which was substantially in the form prescribed by section 11071, Revised Codes of 1921, as amended (Chap. 116, Sess. Laws 1923, p. 284), Mosher alleged that he had just and probable cause to believe and did believe that intoxicating liquor then was being unlawfully manufactured "at and within a certain dwelling-house upon the following described property: The southeast quarter (SE. ¼) of section 22, Tp. 11 N., R. 20 W., M. P. M., Mis-

soula county, Montana, now occupied by Bob King." Then followed reasons for his belief. In the deposition (secs. 12397, 12398, Rev. Codes 1921) given in aid of the complaint Mosher said he was satisfied liquor was being manufactured "in the house or a little shed close to it." The search-warrant commanded the officer "to make immediate and diligent and careful search in that building described as a dwelling-house and all outbuildings situated upon those premises described as: The southeast quarter (SE. 1/4) of Sec. 22, Tp. 11 N., R. 20 W., M. P. M., Missoula county, Montana, for intoxicating liquor and if any intoxicating liquor be found there, to seize the same, with the vessels containing the same and all implements, furniture and vehicles kept or used for the purpose of violating, or with which to violate, any law of this state or of the United States," *etc.* In pursuance of the warrant the sheriff made return that he did "thoroughly search the premises described in the warrant," and that he "found therein" and took away certain articles including copper stills, moonshine whisky (8 gallons), five 100-pound sacks of sugar, "and the following property was destroyed · at ranch at time of seizure: Ten 50-gallon mash barrels, one 3-gallon keg, 80 gallons moonshine whisky." The warrant was issued on January 8, 1924, and return made the same day. Thereafter the justice of the peace filed with the district court the complaint, deposition, search-warrant, return and inventory, as he was required to do by section 12413, Revised Codes of 1921. In the meantime the county attorney had filed an information against King charging him in two counts with possessing intoxicating liquor and manufacturing intoxicating liquor on or about the 8th of January, 1924.

After the justice of the peace had made his return as aforesaid, King filed in the district court his petition to suppress the evidence obtained under the search-warrant. He alleged it was the purpose of the county attorney and sheriff in procuring the search-warrant to obtain evidence against him and

70 Mont.]   State ex rel. King *v*. District Court et al.   195

[70 Mont. 191.]

to use the same in prosecuting him, and that the information filed was based upon the evidence thus secured.

Apparently it was the theory of the county attorney that the [1, 2] description contained in the complaint could be made to aid that in the warrant. This theory is erroneous. If the warrant had contained the description given in the complaint we should sustain it, but the warrant did not contain that description; the essential words "now occupied by Bob King" were omitted, and without them the description was far too general.

The warrant assumed to authorize the sheriff to search "that building described as a dwelling-house and all outbuildings," *etc.* What building described as a dwelling-house? The warrant does not say, and a warrant as to description must be complete in itself. Based upon the complaint and the supporting deposition, the limit of search which should have been authorized was "the dwelling-house occupied by Bob King and the little shed close to it." The sheriff in his return said that he did thoroughly search "the premises described in the warrant," and that he "found therein" the articles which he took. No one can say from the warrant definitely what he was authorized to search, nor can anyone say from his return what particular building he did search, nor where he found the articles he seized. In the proceeding to suppress testimony it was contended by King and witnesses who gave affidavits for him that there were three dwelling-houses and several out-buildings on the premises; on the other hand the county attorney proffered evidence to the effect that there was but one dwelling-house thereon, the other buildings being bunkhouses, barns and the like. Through this confusion there shines out the guiding principle that when it comes to the search and seizure of the property of a citizen there must not be any obscurity or uncertainty.

Section 7, Article III, of the Constitution of Montana provides: "The people shall be secure in their persons, papers, [3] homes, and effects, from unreasonable searches and seiz-

ures, and no warrant to search any place or seize any person or thing shall issue without describing the place to be searched, or the person or thing to be seized, nor without probable cause, supported by oath or affirmation, reduced to writing.''

Substantially this provision is a reiteration of the fourth amendment. Thus it traces back to the determination of the framers of the national Constitution to place unmistakably in the fundamental law safeguards to protect the people from unreasonable searches and seizures, such as had been permitted under general warrants in the form of writs of assistance by the authority of the government in colonial times, by which there had been invasions of the homes and privacy of the citizens, and outrageous seizures or their private papers in support of real or imaginary charges against them. (*Boyd* v. *United States*, 116 U. S. 616, 29 L. Ed. 746, 6 Sup. Ct. Rep. 524 [see, also, Rose's U. S. Notes]; 24 R. C. L. 703.) ''Resistance to these practices,'' said Mr. Justice Day in *Weeks* v. *United States*, ''had established the principle which was enacted into the fundamental law in the fourth amendment, that a man's house was his castle and not to be invaded by any general authority to search and seize his goods and papers.'' (*Weeks* v. *United States*, 232 U. S. 383, Ann. Cas. 1915C, 1177, L. R. A. 1915B, 834, 58 L. Ed. 652, 34 Sup. Ct. Rep. 34 [see, also, Rose's U. S. Notes].) The erudite justice observed that the effect of the amendment is to forever secure the people, their persons, houses, papers and effects against all unreasonable searches and seizures under the guise of law. The protection reaches all alike, whether accused of crime or not, and the duty of giving it force and effect is obligatory upon all entrusted with the enforcement of the law. The United States supreme court has reaffirmed the doctrine of the *Weeks Case* in *Silverthorne Lumber Co.* v. *United States,* 251 U. S. 385, 64 L. Ed. 319, 40 Sup. Ct. Rep. 182, *Gouled* v. *United States,* 255 U. S. 298, 65 L. Ed. 647, 41 Sup. Ct. Rep. 261, and *Amos* v. *United States,* 255 U. S. 313, 65 L. Ed. 654, 41 Sup. Ct. Rep. 266.

This court, speaking through Mr. Chief Justice Brantly, followed and expressly approved it in *State ex rel. Samlin* v. *District Court,* 59 Mont. 600, 198 Pac. 362. We again express our adherence to it. We have considered with interest the opinions of able courts who by plausible but as we think specious reasoning have refused to follow the pronouncement of the supreme court of the United States on the subject. These courts while claiming admiration for the high and splendid principle of the constitutional mandate, refuse to put it into effect. That is not our idea of enforcing the law; it is mere lip service. Our idea is that every citizen of the republic, every agency of government, every officer of the nation or state, from the highest to the lowest, is charged with the preservation and enforcement of the fundamental law.

Of course only unreasonable searches and seizures are prohibited. The constitutional provision was not designed to aid the lawbreaker. But every search and seizure which is not [4] lawful and which is not conducted as the law prescribes is unreasonable. (*State* v. *Wills,* 91 W. Va. 659, 24 A. L. R. 1398, 114 S. E. 261.)

The power to make searches and seizures is absolutely necessary to the public welfare. (*United States* v. *Innelli* [5] sary to the public welfare. (*United States* v. *Innelli* (D. C.), 286 Fed. 731.) But the process may be invoked only in furtherance of public prosecutions. Statutes providing for their issuance and execution are sustained under the constitutional provisions forbidding unreasonable search and seizure only as a necessary means in the suppression of crime and the detection and punishment of criminals, and these are required to be cautiously framed and carefully pursued, in order that the constitutional rights of citizens may not be invaded. (24 R. C. L. 702.) It is provided expressly that no warrant to search any place or seize any person or thing shall issue without describing the place to be searched or the person or thing to be seized. We do not overlook the fact that in our section 7, *supra,* the word "particularly" which appears in the fourth

amendment before the words "describing the place to be searched" is omitted; but we do not regard the omission as important. The meaning is the same. The warrant must designate the premises to be searched and contain a description so specific and accurate as to avoid any unnecessary or unauthorized invasion of the right of privacy. To this end it should identify the property in such manner as to leave to the officer no discretion as to the premises to be searched. (33 C. J. 682; *Commonwealth* v. *Certain Intoxicating Liquors,* 97 Mass. 334.) Says Ruling Case Law: "The constitutional requirement is a description which particularly points to a definitely ascertainable place and so as to exclude all others. The writ should not leave the place to be searched to the discretion of the officer; and the modern authorities are unanimous in holding that a search-warrant directing an officer to search places generally is clearly illegal." (24 R. C. L., p. 713; *People* v. *Musk,* 221 Mich. 578, 192 N. W. 485.)

So it has been held that a warrant directing the search of the dwelling-house of a named person authorizes the search only of the house occupied by him and it is trespass if the officer searches a house owned by him but occupied by another. (*McGlinchy* v. *Barrows,* 41 Me. 74; *In re Application for Search-warrant to Search and Seize Intoxicating Liquors,* 116 Misc. Rep. 512, 190 N. Y. Supp. 574. And see *United States* v. *Boasberg* (D. C.), 283 Fed. 305; *United States* v. *Alexander* (D. C.), 278 Fed. 308.) The warrant itself must point out unerringly the object of the search. The description of the place to be searched and the person or thing to be seized need not be technically accurate; but if the language of the warrant does not point out definitely the place to be searched, the officer must not search, and if it does not point out definitely the person or thing to be seized, he must not seize. Nor may [6] an unlawful search be justified by what is found. "A search that is unlawful when it begins is not made lawful when it ends by the discovery and seizure of liquor," as Judge

Peck remarked in *United States* v. *Slusser* (D. C.), 270 Fed. 818. If it were not so all seizures would be legal which turn out successfully. (*United States* v. *Casino* (D. C.), 286 Fed. 976.) If this constitutional shield occasionally protects the guilty, it is but a part of the price paid for the general good. (*United States* v. *Innelli, supra.*)

We again call attention to the language of Judge Cooley, quoted in the *Samlin Case, supra:* "But as search-warrants are a species of process exceedingly arbitrary in character, and which ought not to be resorted to except for very urgent and satisfactory reasons, the rules of law which pertain to them are of more than ordinary strictness; and if the party acting under them expects legal protection, it is essential that these rules be carefully observed."

In the instant case the rules were not followed. In the [7, 8] warrant there was a departure from the description of the premises set forth in the complaint; the faulty description attempted in the warrant was extended beyond that allowable from the application; the description made the search-warrant a general or blanket warrant, which is never allowable. The return amplified that error. The warrant assumed to authorize the officer to seize intoxicating liquor "with the vessels containing the same and all implements, furniture and vehicles kept or used for the purpose of violating" law. The officer seized 500 pounds of sugar which he was not authorized by the terms of the warrant to do.

In the application to this court the relator prayed that a writ issue prohibiting the use of the evidence so obtained under and by virtue of the search-warrant upon the trial of the criminal case, and directing that the property seized be ordered returned to the relator. Timely application having been made to suppress the evidence procured through the unlawful search and seizure, it is the law that neither the liquor nor other articles seized, nor the evidence of the possession thereof thus acquired, may be used against the relator. But here we arrive

at an important question: Is relator entitled to a return of the liquor and articles seized upon the unlawful search and seizure? Not under any condition shown in the record are the officers entitled to retain the sugar. The warrant, if valid, by its terms would not have authorized taking the sugar. From what place it was taken does not appear. That it had become contraband does not appear from the record. So relator is entitled to its return. Seemingly, however, the moonshine liquor which the officer seized was and is contraband.

Section 11070, Revised Codes of 1921, provides: "It shall be unlawful to have or possess any liquor or property designed for the manufacture of liquor intended for use in violating this Act or which has been so used, and no property right shall exist in any such liquor or property." Presumptively under this section relator has no property right in the liquor nor in any of the other articles seized by the officer (save the sugar). If under this state of facts we order the contraband liquor and articles returned to the relator we cause him upon the instant he receives them to become again a lawbreaker. This court will not willingly enter an order which will conduce to the breaking of the law. (See *United States* v. *Rykowski* (D. C.), 267 Fed. 866.)

The relator is not aided by section 11079, Revised Codes of 1921, as amended: "After the passage and approval of this Act, the possession of liquors by any person not legally permitted under this Act to possess liquor shall be *prima facie* evidence that such liquor is kept for the purpose of being sold, bartered, exchanged, given away, furnished or otherwise disposed of in violation of the provisions of this Act; but it shall not be unlawful to possess liquors in one's private dwelling while the same is occupied and used by him as his dwelling only, provided such liquors are for use only for the personal consumption of the owner thereof and his family residing in such dwelling, and the burden of proof shall be upon the possessor in any action concerning the same to prove that

such liquor was lawfully acquired, possessed and used" (Chap. 116, Sess. Laws 1923, p. 288).

Even by a wild stretch of the imagination we may not pre- [9] sume relator had eighty-eight gallons of "uncolored moonshine whisky" for the personal consumption of himself and his family; a wilder stretch still would be that he had this uncolored moonshine whisky prior to December 31, 1918, when the Prohibition Act went into effect. The presumption is that he possessed the liquor, stills and the like unlawfully when they were taken from him, and that he has no right of property in them. In the record before us he has not attempted to overcome the presumption which exists against him. He merely insists that as a matter of law, because his rights were invaded, he is entitled to an order returning what was taken from him, and he relies for his authority upon the *Samlin Case*. But no such state of facts with respect to the liquor unlawfully seized existed in that case. Sections 11070 and 11079 were not then in force; the statute had not then declared that "no property right shall exist in such liquor or property."

Relator has a right of action against the officer for an un- [10] lawful search and seizure, for the officer was a trespasser. Whether he may recover possession of the liquor and articles seized unlawfully we are not now called upon to determine. Because as a matter of law the articles seized were not taken by authority of any warrant it is unnecessary to consider the applicability of section 11107, Revised Codes of 1921.

Unless the right of the claimant of property seized under a search-warrant is clear, this court will not upon application for a writ of prohibition assume to make disposition of it but will leave the claimant to his remedy at law if any he has. For instance, if it shall appear presumptively that the property is stolen or by the law made contraband, this court will leave to another forum the determination of the question of the right of possession thereto.

In the instant case the ultimate question before the court is whether the relator is entitled to have suppressed the evidence obtained upon the occasion of the unlawful search and seizure. This question being answered in the affirmative a writ will issue prohibiting the use as evidence of the liquor and other articles seized upon the occasion of the unlawful search upon the trial of relator, as well as the use as evidence of the possession thereof so acquired, and directing that the five sacks of sugar seized be returned to him; and it is so ordered.

*Writ issued.*

ASSOCIATE JUSTICES COOPER, HOLLOWAY, GALEN and STARK concur.