STATE, RESPONDENT, v. GARDNER, APPELLANT.

(No. 5,755.)

(Submitted October 19, 1925. Decided October 28, 1925.)

[240 Pac. 984.]

*Intoxicating Liquors—Search-warrants—Probable Cause—Insufficient Showing—Suppression of Evidence—Timely Application.*

Intoxicating Liquors—Search-warrants—Affidavit must Show That Probable Cause for Issuance Exists.
  1. To warrant the issuance of a search–warrant under the liquor law it must appear to the magistrate that probable cause for its issuance exists, and to that end the complaint or affidavit, must set forth the facts which show probable cause; the showing, however, need not be sufficient to justify a conviction, the law being satisfied if by legal evidence direct or circumstantial, it be made to appear that the law is being violated.

Same—Search-warrants—"Probable Cause"—Definition.
  2. "Probable cause" in the sense it is employed in section 7, Article III of the state Constitution and in the liquor law with relation to the issuance of search-warrants, is knowledge of facts, actual or apparent, strong enough to justify a reasonable man in the belief that he has lawful grounds for believing that the law is being violated.

Same—Search-warrants — Affidavit Alleging Past Violations of Law Insufficient, When.
  3. *Held*, in view of the fact that section 11071, Revised Codes of 1921, as amended by Chapter 116, Laws of 1923 (as well as section 11104), authorizing the issuance of search-warrants in liquor cases, speaks in the present tense, that violation of the law on a given day does not constitute probable cause for believing that like illegal acts were being committed twenty-five days afterward, in the absence of anything to indicate that the character of the then operations had not changed in the meantime.

Same—Illegal Search-warrant not Rendered Lawful by What is Found Under It.
  4. A search made under a warrant issued without probable cause is unlawful and cannot be aided or made lawful by what the searching officer finds.

Same—Suppression of Evidence—When Application is Timely.
  5. A motion to suppress evidence made before the cause in which it was to be used was actually called for trial, after having been reset several times, was timely, and defendant, by permitting two months to elapse after his arraignment and two days after the case

---

  4. Admissibility of evidence secured by search or seizure, see notes in 15 Ann. Cas. 1205; Ann. Cas. 1915C, 1182.

had originally been set for trial before making the motion, was not open to the charge of having waived his right to object to the evidence.

Criminal Law, 16 C. J., sec. 1110, p. 571, n. 93, 94.
Intoxicating Liquors, 33 C. J., sec. 371, p. 675, n. 2; p. 677, n. 13 New; sec. 375, p. 678, n. 36.
Probable Cause, 32 Cyc., p. 402, n. 19 New.
Searches and Seizures, 35 Cyc., p. 1266, n. 13; p. 1267, n. 20; p. 1269, n. 41.

*Appeal from District Court, Custer County; S. D. Mc-Kinnon, Judge.*

FRANK GARDNER was convicted of unlawfully manufacturing and possessing intoxicating liquors, and he appeals. Reversed and remanded for new trial.

*Messrs. Spaulding & McConnell* and *Mr. Frank Hunter,* for Appellant, submitted a brief; *Mr. C. A. Spaulding* argued the cause orally.

Citing: *State ex rel. Stange* v. *District Court,* 71 Mont. 125, 227 Pac. 576; *Livelar Co.* v. *State,* 98 Miss. 330, 53 South. 681; *People* v. *Chippewa Circuit Judge,* 226 Mich. 326, 197 N. W. 539.

*Mr. L. A. Foot,* Attorney General, *Mr. S. R. Foot,* Assistant Attorney General, and *Mr. Rudolph Nelstead,* County Attorney of Custer County, submitted a brief.

The motion to suppress was made over two months after the defendant was arraigned, over one month after he was notified that the case had been set for trial, three days after the date fixed by the court as the date of trial, and two days after the case was originally called for trial. Respondent therefore contends that the motion was not timely. (*State* v. *Gotta,* 71 Mont. 288, 229 Pac. 405; *State ex rel. Skrukrud* v. *District Court,* 71 Mont. 570, 230 Pac. 1089, 1090; *State* v. *Rice,* 73 Mont. 272, 235 Pac. 716.)

[74 Mont. 377.]

The Dermid affidavit dicloses a state of facts which indicate a more or less permanent and continuing plan to violate the law. Mrs. Dermid did not testify to merely a sale on January 3, 1925. If she had, then *People* v. *Chippewa,* 226 Mich. 326, 197 N. W. 539, cited by appellant, might be applicable; but she stated that liquor was being manufactured and that liquor was being sold—not an isolated sale—but several sales, disclosing that the defendant was carrying on a permanent business of making and disposing of intoxicating liquors. And these facts fully justified the district judge in believing that probable cause existed. (*People* v. *Warner,* 221 Mich. 657, 192 N. W. 566.)

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

On January 28, 1925, the county attorney of Custer county appeared before the judge of the district court of that county and made and verified a complaint in which he stated that "he has just and probable cause to believe, and does believe, that intoxicating liquor is now unlawfully manufactured and sold and otherwise disposed of in the following described premises [particularly describing them], which said dwelling-house is in the possession of Frank Gardner and Mrs. Frank Gardner. That the following are the reasons of his belief, to-wit: That one Mrs. Arthur Dermid did on or about the third day of January, 1925, see intoxicating liquors in the possession of said Frank Gardner and Mrs. Frank Gardner, which were then and there unlawfully manufactured and unlawfully sold by the said Frank Gardner and Mrs. Frank Gardner in the dwelling-house above described, and that the said Mrs. Arthur Dermid did then and there see intoxicating liquors sold by the said Frank Gardner and Mrs. Frank Gardner in said dwelling-house above described." At the same time Mrs. Arthur Dermid made affidavit "that on or about the third day of January, 1925, she saw intoxicating

liquor in the possession of one Frank Gardner and Mrs. Frank Gardner in the following described premises [particularly describing them], and which said intoxicating liquor was then and there unlawfully manufactured and sold by the said Frank Gardner and Mrs. Frank Gardner, and that affiant at the same time and place saw intoxicating liquor sold by the said Frank Gardner and Mrs. Frank Gardner in the dwelling-house hereinbefore described. Affiant saw then and there jugs and bottles containing intoxicating liquors delivered by said Gardners to other persons and money as consideration therefor given to the Gardners.''

Upon the complaint and affidavit the judge caused a search-warrant to issue which was served on the same day. The premises occupied by Frank Gardner were searched and a still, some mash, moonshine whisky, containers and articles used in the manufacture of intoxicating liquor were seized. On the same day an information was filed, which charged Gardner with the offenses of which he was later convicted. In due time he was arrested, arraigned, his plea entered and the cause set for trial for March 31. Later it was reset for April 7 and again reset for April 13 and was tried on April 14. On April 3 Gardner moved the court to suppress as evidence the articles seized and information obtained by the search, and this motion was heard and on April 4 overruled. At the trial, and over the objections of the defendant, the seized articles and the information obtained by the officers under the search-warrant were admitted in evidence—indeed, they constituted all of the evidence offered by the state, and upon that evidence the defendant was convicted of unlawfully manufacturing and possessing intoxicating liquor. He has appealed from the judgment, and insists that the court erred, in the first instance, in refusing to suppress the evidence, and erred again in admitting the evidence at the trial.

Section 7, Article III, of our state Constitution, provides [1] that a search-warrant shall not issue ''without probable

cause, supported by oath or affirmation, reduced to writing."
Section 11071, Revised Codes, as amended by Chapter 116,
Laws of 1923, and section 11104, Revised Codes, are to all
intents and purposes identical so far as they are involved in
this inquiry, and since the former Act is the latest expression
of the legislative will, reference to it alone will be made. That
Act provides that whenever complaint is made to a district
judge that the complainant has just and probable cause to
believe, and does believe, that intoxicating liquor is *now* un-
lawfully manufactured, kept for sale, sold, exchanged, used
or disposed of in violation of any law of this state, *with the
facts upon which such relief is based,* the judge may issue a
search-warrant.

Notwithstanding the crude form in which the legislative
intention is expressed, it is apparent from this Act in its
entirety, and it is also elementary that it must appear to the
magistrate that probable cause exists, and to this end the
statute requires that the facts which show probable cause
must be stated in the complaint or affidavit. (*State* v. *English,*
71 Mont. 343, 229 Pac. 727.)

It could not be questioned that the complaint and affidavit
now before us do set forth facts sufficient to convince the
judge on January 28 that probable cause existed to believe
that Gardner had violated the liquor laws on January 3,
but the statute speaks in the present tense; that is to say,
it must be made to appear to the magistrate that the law is
being violated at the time the warrant is issued. (*State ex
rel. Stange* v. *District Court,* 71 Mont. 125, 227 Pac. 576.)

Neither the Constitution nor the statute requires that the
showing must be made by direct evidence or that it must be
sufficient to justify a conviction. The law is satisfied if, by
legal evidence, direct or circumstantial, it is made to appear
that probable cause exists to believe that the statute *is being
violated.*

The term "probable cause," like the term "reasonable
[2]  doubt," is exceedingly difficult to define with any degree

of precision. As a reasonable doubt signifies a doubt founded in reason, so probable cause means cause which is probable. The word "probable" means "having more evidence for than against; supported by evidence which inclines the mind to believe, but leaves some room for doubt." (Webster's International Dictionary.) The following definition has been quoted by this court: "Probable cause is knowledge of facts, actual or apparent, strong enough to justify a reasonable man in the belief that he has lawful grounds for prosecuting the defendant in the manner complained of." Probable cause does not depend upon the actual state of the case in point of fact, for there may be probable cause to believe that one is guilty of a crime although subsequent events disclose that he is innocent. It is sufficient that the belief exists and that it is supported by facts and circumstances which reasonably warrant it. (*State ex rel. Neville* v. *Mullen,* 63 Mont. 50, 207 Pac. 634; *State ex rel. Merrell* v. *District Court,* 72 Mont. 77, 231 Pac. 1107.)

From what has been said it is apparent that no hard-and-fast rule can be prescribed by which to determine what will or will not constitute probable cause in any given instance. Every case must depend upon its own peculiar facts and circumstances.

For the purpose of the motion to suppress, the facts stated in the complaint and affidavit are assumed to be true. Those facts are: That on or about January 3, 1925, the defendant was unlawfully manufacturing and in possession of intoxicating liquor. The inquiry presented by this appeal arises: [3] Does the bare fact that defendant was engaged in violating the law on January 3 constitute probable cause to believe that he was engaged in the like violation on January 28?

While modern criminal codes are designed to afford protection to society, they all look to the possible reformation of the criminal; and if it be possible for an offender against the law to reform, then it cannot be said that because a man

commits one crime it is reasonable to presume that he will commit a like crime twenty-five days or a month later. The complaint of the county attorney does not furnish any primary evidence; on the contrary, it is based solely upon the information supplied by Mrs. Dermid, and Mrs. Dermid's affidavit is distinguished by the facts which it fails to disclose, as much as by the meager facts stated. Apparently she was not asked what she observed in the defendant's residence on January 3. She does not state anything from which it can be said that defendant's unlawful operations appeared to be of a continuing or more or less permanent character. If defendant were equipped with a still connected with a water supply and with heat available, if he were in possession of any considerable quantity of mash or other materials from which liquor might be manufactured, and containers in which liquor might be kept, such facts are concealed. And neither is there anything disclosed from which it could be determined that the conditions surrounding defendant's operations on January 3 had or had not changed during the intervening twenty-five days.

A somewhat similar situation was presented in *People* v. *Chippewa*, 226 Mich. 326, 197 N. W. 539. In that case the affidavit was made on June 21, 1923, and recited that on or about April 15, 1923, the affiant purchased one pint of whisky from J. Burdeno at the latter's premises, particularly described. Upon that affidavit a search-warrant was issued and Burdeno's premises searched. On motion made by the accused before his trial, the court ordered suppressed the evidence obtained by the search, and the state sought a review of the ruling. The supreme court held that evidence of a violation of the law by Burdeno on April 15 did not furnish probable cause to believe that he was engaged in the commission of crime on June 21 in the absence of anything to indicate a continuance or repetition of the offense. And in this case we hold that evidence of isolated illegal acts committed on January 3 does not constitute probable cause to believe that

like illegal acts were being committed on January 28 in the absence of anything to indicate the character of the operations or that the conditions had or had not changed during the intervening period of twenty-five days. (*State ex rel. Sadler* v. *District Court*, 70 Mont. 378, 225 Pac. 1000; *State ex rel. Hansen* v. *District Court*, 72 Mont. 245, 233 Pac. 126.)

It follows that the search-warrant was issued without probable cause, in violatiaon of the provisions of the Constitution and the statutes; that the evidence should have been suppressed; and that the court erred in admitting it upon the trial. (*State ex rel. Samlin* v. *District Court*, 59 Mont. 600, 198 Pac. 362; *State ex rel. Thibodeau* v. *District Court*, 70 Mont. 202, 224 Pac. 866; *State* v. *Rice*, 73 Mont. 272, 235 Pac. 716; *Agnello* v. *United States*, U. S. Adv. Op. Nov. 2, 1925, p. 1, 70 L. Ed. —, 46 Sup. Ct. Rep. 4 [see, also, Rose's U. S. Notes].

It is now too well settled to admit of doubt that a search [4] which is unlawful in its inception cannot be aided or made lawful by what the searching officer finds. If this were not true, every successful search would be lawful, however much the law may have been violated in securing the warrant under which the search was made. (*State ex rel. King* v. *District Court*, 70 Mont. 191, 224 Pac. 862.)

It is urged by the attorney general that even though the [5] complaint and affidavit were not sufficient, the defendant waived the right to object, by failing to make timely application to have the evidence suppressed. In practically every jurisdiction where the procedure by motion to suppress is recognized, it is held that the application to suppress must be made timely, and the decided cases do not leave room for doubt as to what is meant by a timely application. In the *Samlin Case,* above, we intimated that if the application is made before the trial it is sufficient, and this is the rule followed generally. (*State* v. *Gotta*, 71 Mont. 288, 229 Pac. 405; *State ex rel. Sadler* v. *District Court*, above; *Weeks* v. *United States*, 232 U. S. 383, 58 L. Ed. 652, 34 Sup. Ct. Rep. 341,

Ann. Cas. 1915C, 1177, L. R. A. 1915B, 834 [see, also, Rose's
U. S. Notes]; *Gouled* v. *United States,* 255 U. S. 298, 65 L. Ed.
647, 41 Sup. Ct. Rep. 261 [see, also, Rose's U. S. Notes];
*Amos* v. *United States,* 255 U. S. 313, 65 L. Ed. 654, 41 Sup.
Ct. Rep. 266.) The principle which underlies the rule is
that a court will not stop the trial of a criminal case to
frame a collateral issue and determine by what means the
evidence was obtained. (*State* v. *Rice,* above; *Adams* v. *New
York,* 182 U. S. 585, 48 L. Ed. 575, 24 Sup. Ct. Rep. 372;
*Weeks* v. *United States,* above.) Since in this instance the
motion to suppress was made before the cause was actually
called for trial, it was "timely," within the meaning of that
term as employed in the authorities.

For the reasons stated, the judgment is reversed and the
cause is remanded to the district court of Custer county for
a new trial.

*Reversed and remanded.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES
GALEN, STARK and MATTHEWS, concur.