STATE EX REL. BARACKER, RELATOR, v. DISTRICT COURT
ET AL., RESPONDENTS.

(No. 5,894.)

(Submitted February 11, 1926.  Decided February 27, 1926.)

[244 Pac. 280.]

*Writ of Prohibition—Intoxicating Liquors—Suppression of
Evidence—Search-warrants—Issuance—Approval of County
Attorney—Affidavit must Contain Facts, not Conclusions—
What Sufficient.*

Search-warrants—Issuance—Evidence of Approval by County Attorney
—What Sufficient.
1.  A justice of the peace court being one of limited jurisdiction,
the fact that the approval of the county attorney to the issuance
of a search-warrant must affirmatively appear from the record
on application for writ to prohibit the use of evidence obtained
by the search, but in the absence of any statutory requirement in
Chapter 116, Laws of 1923, amendatory of section 11071, Revised
Codes of 1921, of how the approval shall be evidenced, a recital
that his approval was obtained is *prima facie* sufficient to establish
the fact.

Same—Affidavit—Facts must be Stated—Conclusions Insufficient.
2.  To warrant the issuance of a search-warrant the affidavit
must state facts, conclusions, however positively stated, being in-
sufficient, the test whether the statements are one or the other
being whether the affiant could be prosecuted for perjury if the
statements were false.

Same—Affidavit—Statement of Fact—What Constitutes.
3.  Under the above rule (par. 2), *held* that a recital in an affi-
davit for a search-warrant, "I personally saw a keg of intoxicat-
ing beverages in said barn," without disclosing the means employed
by affiant for ascertaining the contents of the keg, was a state-
ment of fact for the making of which, if untrue, a charge of
perjury could be lodged against him, and therefore sufficient, if
believed by the magistrate, to show probable cause for the issuance
of the warrant.  (MR. JUSTICE GALEN dissenting.)

· [1] Searches and Seizures, 35 **Cyc.**, p. 1266, n. 15, p. 1268, n. 32
New.
[2] Intoxicating Liquors, 33 **C. J.**, sec. 371, p. 675, n. 2.  Perjury,
30 **Cyc.**, p. 1402, n. 19 New.  Searches and Seizures, 35 **Cyc.**, p. 1266, n.
13.
[3] Intoxicating Liquors, 33 **C. J.**, sec. 371, p. 675, n. 2.

Original  application  by  the  State,  on  the  relation  of
Howard Baracker against the District Court in and for the

County of Roosevelt, and its Judge, for writ prohibiting the use of article seized under a search-warrant in a criminal prosecution against relator. Proceeding dismissed.

*Mr. C. A. Spaulding* and *Mr. Frank M. Catlin,* for Relator, submitted a brief; *Mr. Spaulding* argued the cause orally.

*Mr. L. A. Foot,* Attorney General, *Mr. I. W. Choate,* Assistant Attorney General, and *Mr. Hugh N. Marron,* County Attorney of Roosevelt County, for Respondents, submitted a brief; *Mr. Choate* and *Mr. Marron* argued the cause orally.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

On September 5, 1925, Charles E. Manning made affidavit that he had reason to believe, and did believe, that intoxicating liquors were unlawfully possessed and kept for sale by Howard Baracker at a certain barn (particularly described) in Poplar, Roosevelt county, Montana, and that the reason for his belief was that on the night of September 4, 1925, he "personally saw a keg containing intoxicating beverages in said barn," *etc.* Upon this affidavit the justice of the peace before whom it was made issued a search-warrant, which was duly executed. The sheriff in his return recited that he searched the designated premises and seized therein "one five-gallon keg nearly full of moonshine, 12 whisky glasses, 1 jug, 1 glass bottle, 1 tin cup." On September 10 an information was filed charging Baracker with the unlawful possession and sale of intoxicating liquor. Timely application was made to suppress the evidence secured by the search and, when the application was denied, this proceeding was instituted to prohibit the use of the evidence.

The only questions presented are: (1) Does the record disclose that the county attorney consented to the issuance of the search-warrant, and (2) does the affidavit state facts sufficient to show probable cause?

1. Section 11071, Revised Codes of 1921, as amended by
[1] Chapter 116, Laws of 1923, provides that upon a proper
showing a justice of the peace "may, with the approval of
the county attorney, issue a search-warrant," *etc.* This is
the only reference to the subject to be found in the law; but
since a justice of the peace court is one of limited jurisdiction,
the fact that such approval was given must appear affirma-
tively from the record. (*State ex rel. Skrukrud* v. *District
Court,* 71 Mont. 570, 230 Pac. 1089.)

It will be observed that although the statute requires that
the approval be obtained before the warrant is issued, it
is altogether silent as to the manner or form in which the
fact of approval must be made to appear. Under these cir-
cumstances the courts are not authorized to say that it must
be made to appear in a particular form or manner, if it
appears from the record at all. In this instance the justice
of the peace recited in the warrant that the county attorney
had given his approval, and in the absence of any statutory
requirement that the fact should be evidenced in a different
form or manner, it must be held that the recital is sufficient,
*prima facie,* to establish the fact.

2. The statute above requires that the affidavit for a search-
warrant must state the facts upon which the affiant's belief
is based; however, the statute does not add anything to the
law as it existed theretofore. Without it, the same rule would
be invoked in virtue of the provisions of the Constitution.
(Art. III, sec. 7.)

It is elementary that probable cause for issuing a search-
[2] warrant must be made to appear to the magistrate who
is called upon to issue the warrant; that the affidavit must
state facts sufficient to justify the issuance of the warrant,
and that an affidavit which states only conclusions, however
positively stated, is not sufficient. This is the rule in this
state, now too firmly established to be open to further con-
troversy. (*State ex rel. Samlin* v. *District Court,* 59 Mont.
600, 198 Pac. 362; *State ex rel. Thibodeau* v. *District Court,*

70 Mont. 202, 224 Pac. 866; see, also, Thorpe on Prohibition and Industrial Liquor, sec. 776; Cornelius on Search and Seizure, sec. 90.) But it is frequently a difficult matter to distinguish between a statement of an ultimate fact and a statement of a conclusion, or to determine in any given instance whether a particular statement belongs to one class or the other. The test usually employed is this: Could the affiant be prosecuted for perjury if the statement is false?

Speaking generally, perjury can be predicated only upon a false statement of a material fact made under oath (sec. [3] 10878, Rev. Codes). If, then, a charge of perjury could be maintained against Manning if his statement, "I personally saw a keg containing intoxicating beverages in said barn," is untrue, it is because the statement is one of fact, as distinguished from a mere conclusion. It could not be disputed that if the statement is one of fact, the fact is material. (21 R. C. L., p. 259.) The statement does not disclose the means employed by Manning to ascertain that the keg contained intoxicating beverages; in other words, the affiant does not tell whether he smelled or tasted the contents of the keg, but he does swear positively that on the night of September 4, 1925, he personally saw a keg containing intoxicating beverages in the barn occupied by the accused. If this statement is untrue, we are of the opinion that a charge of perjury could be predicated upon it,—that is, that it is a statement of an ultimate fact, as distinguished from a mere conclusion.

In *Neal* v. *Commonwealth*, 203 Ky. 353, 262 S. W. 287, the affidavit was in the following form: "The affiant states that he knows that intoxicating liquors are sold and possessed at said soft drink stand." It was held that this is a statement of an ultimate fact which meets the test referred to above.

In *State* v. *Quartier*, 114 Or. 657, 236 Pac. 746, the affidavit was to the effect that there is in the possession of Albert and Nettie Quartier at a designated place in Portland, a still worm, mash and intoxicating liquors. In disposing of the same contention as that made in the case before us, the supreme court

of Oregon said: "The affidavit in question contains a concrete statement of facts, and does not consist of conclusions of law." These cases are in harmony with the decision of this court in *State* v. *English*, 71 Mont. 343, 229 Pac. 727.

From the recital in the Manning affidavit the justice of the peace found that there was probable cause for issuing a search-warrant and the warrant was issued accordingly.

The test for determining what is probable cause has been announced repeatedly. In *Carroll* v. *United States*, 267 U. S. 132, 39 A. L. R. 790, 69 L. Ed. 543, 45 Sup. Ct. Rep. 280, the supreme court said: "If the facts and circumstances before the officer are such as to warrant a man of prudence and caution in believing that the offense has been committed, it is sufficient."

In *Dumbra* v. *United States*, 268 U. S. 435, 69 L. Ed. 1032, 45 Sup. Ct. Rep. 546, the same court said: "In determining what is probable cause, we are not called upon to determine whether the offense charged has in fact been committed. We are concerned only with the question whether the affiant had reasonable grounds at the time of his affidavit and the issuance of the warrant for the belief that the law was being violated on the premises to be searched; and if the apparent facts set out in the affidavit are such that a reasonably discreet and prudent man would be led to believe that there was a commission of the offense charged, there is probable cause justifying the issuance of a warrant."

The question now arises: Does the case before us meet the test prescribed above? In the very nature of things there cannot be any hard-and-fast rule by which to determine what facts or circumstances ought or ought not to warrant a man of prudence and caution in believing that an offense has been committed. Every case must be decided upon its own facts and circumstances, and facts deemed sufficient by one court may not satisfy another tribunal of equal dignity and authority. Indeed, the decided cases disclose the conflicting views

entertained by different courts upon this subject. (Cornelius on Search and Seizure, sec. 83, note.)

In each of the following cases we omit the formal parts of the affidavit and as well the description of the premises:

In *United States* v. *Friedman*, 267 Fed. 856, the affidavit stated that at a certain time the affiant purchased from the accused intoxicating liquor containing one-half of one per centum or more of alcohol and that he paid therefor a named price. Concerning these recitals the court said: "These are facts, and upon such facts the commissioner could find probable cause to believe that an offense against the National Prohibition Act had been committed."

In *Boehm* v. *United States*, 6 Fed. (2d) 497, the affidavit contained these recitals: "In certain premises in possession of Louisa Boehm and Joe Boehm * * * there is located certain illicit stills or distilling apparatus designed and intended to be used * * * for distilling intoxicating liquor; coils, unions, condensers, mash intended to be used or fit for distilling intoxicating liquor and certain vessels and utensils in which intoxicating liquor is kept and stored." In disposing of the question of the sufficiency of the affidavit the court remarked: "These are positive statements which we deem sufficiently definite and circumstantial to authorize the commissioner to issue the warrant."

In *Walters* v. *Commonwealth*, 199 Ky. 182, 250 S. W. 839, the affidavit stated that "affiant personally saw John Walters carry a basket of bottles of whisky from same, to-night, and knows that intoxicating liquor is possessed and sold at residence and premises No. 926 South Limestone Street, being the premises of Collis Walters," *etc.* This affidavit was held to be sufficient.

In *Alvey* v. *Commonwealth*, 199 Ky. 655, 251 S. W. 856, the affidavit stated that affiant "has been in and on said premises and has seen said Chas. F. Alvey in possession of intoxicating liquors on said premises and has seen him make

75 Mont.—31

sales of said intoxicating liquors.'' These recitals were held to be sufficient to show probable cause.

In *Neal* v. *Commonwealth,* the affidavit copied above was held to be sufficient.

In *State* v. *Smith* (Okl. Cr.), 235 Pac. 273, the affiant stated that at the time the affidavit was made, certain intoxicating liquors were being manufactured, sold, bargained, given away and otherwise furnished and kept for the purpose of being sold, bargained and given away in violation of the law; then followed a description of the liquors, a description of the premises and the statement that the true name of the offender was unknown to the affiant. The court held this affidavit sufficient.

In *State* v. *Quartier* above, the affidavit there considered was held to state facts sufficient to show probable cause.

In *Steele* v. *United States,* 267 U. S. 498, 69 L. Ed. 757, 45 Sup. Ct. Rep. 414, the affidavit stated: ''I saw a small truck driven into the entrance of the garage, and I saw the driver unload from the end of the truck a number of cases of stenciled whisky; they were the size and appearance of whisky cases, and I believe that they contained whisky,'' *etc.* This affidavit was held to be sufficient to justify the issuance of a search-warrant.

In *State* v. *English* above, this court held sufficient an affidavit which stated that ''on the seventh day of March, A. D. 1924, he [affiant] purchased intoxicating liquors from Jay English.''

In *State* v. *Gardner,* 74 Mont. 377, 240 Pac. 984, the affidavit by Mrs. Dermid recited: ''That on or about the third day of January, 1925, she saw intoxicating liquor in the possession of one Frank Gardner and Mrs. Frank Gardner in the following described premises [particularly describing them], and which said intoxicating liquor was then and there unlawfully manufactured and sold by the said Frank Gardner and Mrs. Frank Gardner, and that affiant at the same time and place saw intoxicating liquor sold by the said Frank Gardner

and Mrs. Frank Gardner in the dwelling-house hereinbefore described. Affiant saw then and there jugs and bottles containing intoxicating liquors delivered by said Gardners to other persons and money as consideration therefor given to the Gardners." This court held that the facts disclosed were "sufficient to convince the judge * * * that probable cause existed to believe that Gardner had violated the liquor laws on January 3," but that those facts alone did not disclose probable cause for believing that a like offense was committed on January 28, the time the affidavit was made. (See, also, *State* v. *Rice*, 73 Mont. 272, 235 Pac. 716.)

Upon principle, we are unable to distinguish any of those cases from the case now before us. The same reasoning which justified the conclusion reached in each one of them justifies our conclusion that the affidavit before us is sufficient. Accordingly the proceeding is dismissed.

*Dismissed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES STARK and MATTHEWS concur.

MR. JUSTICE GALEN, Dissenting: I do not agree with the views expressed by the majority in disposing of the question of the sufficiency of the affidavit to show probable cause for the issuance of the search-warrant. Question as to whether prohibition is good or bad legislative policy is beyond the realm of our discussion; it constitutes the law of the land, and should be respected. However, it never was and never could have been intended that it should be so construed as to paralyze constitutional guaranties effective and universally respected as applied to other offenses. The principle involved is not whether the prohibition law shall be upheld, but rather whether we shall scrap the Constitution. The result in the instant case is not so important as the far-reaching effects of such declaration of the law by this court. In my opinion, it knocks at the very foundation of constitutional government,

484  State ex rel. Baracker *v.* District Court.  [Dec. T. '25

[75 Mont. 476.]

and transgresses the sacred and inviolable guaranties of human liberties, made the cornerstone of this great republic by our forefathers. The rule announced is wrong, and I unhesitatingly denounce it.

The adoption of the Eighteenth Amendment to the Constitution of the United States did not repeal its Bill of Rights, thus sacredly guaranteed to the people as the basic principle of a free and independent government. The Constitution was amended, not abrogated. If we are to preserve our much-boasted Republican form of government, with its assurances of human rights and liberties, we must not treat lightly, much less disregard, the guaranties to the people therein contained, however strong the expediency or clamor of the hour. The lawmakers, and above all the courts, must refrain from any attempted curtailment of or encroachment upon our constitutional guaranties. They constitute the strongest barriers against autocracy, mob violence, and the invasion of human liberties. Continued disregard or distortion of its mandates must inevitably result in disaster.

The Fourth Amendment to the federal Constitution declares: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated; and no warrants shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." The Bill of Rights in our state Constitution embraces a like provision. (Sec. 7, Art. III.)

Professor Cooley, in discussing the effects of this provision says: "*First*, a warrant must issue; and this implies (a) a law which shall point out the circumstances and conditions under which the warrant may be granted; (b) a court or magistrate empowered by the law to grant it; (c) an officer to whom it may be issued for service. *Second*, a showing of probable cause, by which is meant the production of satisfactory evidence to the court or magistrate, (a) showing that a case exists in which the issue of a warrant would be justified in law;

(b) pointing out the place to be searched, and the persons or things to be seized if they shall be found there. *Third,* a particular description, in the warrant, of place, person, or things sufficient to guide the officer in executing it. Nothing less than this can be sufficient.'' (Cooley's Principles of Constitutional Law, pp. 218, 219.)

The legislature evidently had these constitutional restrictions in mind when the statute was enacted authorizing the issuance of search-warrants in this class of cases, for it is therein expressly provided that whenever a verified complaint in writing is made ''to any judge having cognizance of criminal offenses, or any justice of the peace, that complainant has just and probable cause to believe and does believe, that intoxicating liquor is manufactured, kept for sale, sold, used or disposed of in violation of any law of this state, in any house, building, premises, boat, receptacle, or any other place whatsoever (particularly describing and designating the same) *with the facts upon which such belief is based,* the judge or justice may, *with the approval of the county attorney,* issue a search-warrant.'' (Sec. 11071, Rev. Codes 1921, as amended by Chapter 116, Laws 1923.)

This court can go no further than declare the law as it is enacted within proper constitutional limits. Deviation from the statutory requirements is not only wholly unjustified, but disastrous in its effect. The condition precedent to the issuance of the requisite warrant is a written verified statement showing probable cause *''with the facts''* upon which the complainant's belief is based. Such a trespass upon the inviolable rights of a citizen is wholly unwarranted, except in instances where facts are presented to the magistrate from which probable cause may be determined to exist; mere suspicion, conjecture or conclusions will not suffice. Were it otherwise, our constitutional guaranties would amount to nothing. The courts are powerless to nullify the mandates of the Constitution, and should never undertake to do so.

The affidavit before us, in recital of the facts upon which probable cause is attempted to be shown for the issuance of the warrant, simply states that complainant *"personally saw a keg* containing intoxicating beverages" on the premises of the accused. The facts disclosed are that he saw a keg. Manifestly, this fact alone is not sufficient under the Constitution and the statute to warrant the search of the premises of the accused. However, he adds that it contained "intoxicating beverages"; this does not help matters, for in its entirety there is no sufficient showing upon which a judicial determination may be made. Other facts must appear, such as that by the use of his senses, or from circumstances stated, he was able to determine that the keg contained "intoxicating beverages." A warrant may not be issued upon mere statement of a conclusion of the applicant. Facts must be affirmatively shown from which the judicial officer to whom the application is addressed may form his own independent conclusion as to the existence of probable cause. (*State ex rel. Samlin* v. *District Court,* 59 Mont. 600, 198 Pac. 362; *State ex rel. Thibodeau* v. *District Court,* 70 Mont. 208, 224 Pac. 866.) Probable cause is such a state of facts and circumstances as would lead a careful and conscientious man to believe the accused person guilty. (*Martin* v. *Corscadden,* 34 Mont. 308, 86 Pac. 33; *Hawley* v. *Richardson,* 60 Mont. 118, 198 Pac. 450; *Cornner* v. *Hamilton,* 62 Mont. 239, 204 Pac. 489.)

The decision in the case of *State* v. *English,* 71 Mont. 343, 229 Pac. 727, is clearly distinguishable from the case now before us. In that case it appears that the deputy county attorney presented to the district judge a verified complaint together with the statement of one H. E. Ford, and upon these obtained a search-warrant. The affidavit for the warrant recites that the affiant on a date specified "purchased intoxicating liquors from" the accused. The order directing the issuance of the warrant recited: "The deputy county attorney, Ben Meyers, and H. E. Ford appear before the court in chambers; H. E. Ford is sworn and examined by the court, and the

*court having heard the testimony* of said affiant finds that
there is probable cause for the issuance of search-warrant,''
*etc.* From this record this court held ''that the magistrate—
not the witness—must determine whether probable cause exists,
and to that end *sufficient facts must be disclosed* from which
*the determination may be had.*  *  *  *  However brief the
statement may appear, it cannot be urged seriously that the
magistrate could not find from it that there was probable
cause to believe that English was in possession of intoxicating
liquor which he was using for an unlawful purpose.'' To
the decision in that case I agreed, and see no reason to modify
the same. There were statements of fact ''however brief,''
rather than conclusions before the magistrate from which he
was in position to make determination. In that case the senses
of the affiant gave him knowledge of the facts stated, namely:
that at a specific time and place *''he purchased intoxicating
liquors''* from the accused. Facts are shown to have been
placed before the magistrate from which determination of
probable cause could be made, whereas in the case under dis-
cussion, the magistrate was considering a bald statement
which, without explanation, is impossible. Science has not
yet sufficiently advanced to enable a person to X-ray a keg
and determine the particular kind of liquid it may contain,
nor is it possible for the judge to read the mind of a witness,
independent of facts which he narrates.

It is the keg's contents which are under the ban—not the
keg; therefore important facts were lacking in the affidavit,
namely: how the affiant knew the contents of the keg. It
does not appear whether the affiant was a foot distant from
the keg or a city block away. It must be apparent that at-
tendant circumstances upon which the witness' knowledge is
based constitute a necessary prerequisite; otherwise it is im-
possible for the magistrate to make a judicial determination
of probable cause. That which was said by this court in the
recent case of *State ex rel. Sadler* v. *District Court,* 70 Mont.
378, 225 Pac. 1000, respecting the arrest of a person without

a warrant is equally applicable here, *viz.*: "It is not every idle and unreasonable charge which will justify an arrest. An arrest without a warrant is illegal when it is made upon mere suspicion or belief (*State ex rel. Neville* v. *Mullen,* 63 Mont. 50, 207 Pac. 634)."

The decisions of the supreme court of the United States cited do not bear out the majority opinion. As shown, in the case of *Carroll* v. *United States,* 267 U. S. 132, 39 A. L. R. 790, 69 L. Ed. 543, 45 Sup. Ct. Rep. 280, it is held that the facts and circumstances must be such "as to warrant a man of prudence and caution in believing an offense has been committed." The most recent expression upon the subject made by the United States supreme court, in the case of *Dumbra* v. *United States,* 268 U. S. 435, 69 L. Ed. 1032, 45 Sup. Ct. Rep. 546, decided May 25, 1925, cited by Mr. Justice Holloway in the majority opinion, does not sustain the court's conclusion. In that case the rule is stated that "if the apparent facts set out in the affidavit are such that a reasonably discreet and prudent man would be led to believe that there was a commission of the offense charged, there is probable cause justifying the issuance of a warrant."

To hold that whether the affiant may be prosecuted for perjury is the test of the sufficiency of the showing required to determine probable cause is evasive of the constitutional as well as the statutory requirements, and not in accord with reason. Neither does it conform to the views expressed on the subject by the supreme court of the United States. Such doctrine is absurd. It permits the affiant to risk a chance that he has made a good guess: If liquor is in fact found as a result of the warrant issued, he is justified; if not, he may be prosecuted for perjury. This is poor comfort to a person whose sacred rights have been outraged upon mere suspicion. A statement made that a keg in the possession of another contains whisky is a conclusion merely. Naturally the first inquiry is, "How do you know what is in the keg?" The requirements of the law are that facts be shown from

which the conclusion is deduced. Without such facts there cannot possibly be judicial determination made of the existence of probable cause. From the bald assertion made by another that he saw a keg ''containing intoxicating beverages,'' would a reasonably discreet and prudent man be led to believe that the keg in fact contained such substance? I think not. Such a man would require evidence upon which to make determination of the character of the keg's contents. In the absence of such a showing, how can it possibly be decided that sufficient probable cause exists for the issuance of the warrant? Manifestly it cannot be done. The facts should not be withheld, and the courts in the administration of the law, should not encourage officers to see how little fact showing of probable cause may withstand the test. Nor should this court approve of the sufficiency of proofs submitted which strain the constitutional restrictions to the utmost limit. In all instances the courts should insist that the evidence be presented so far as available, removing speculation from consideration as far as possible. Officers charged with the enforcement of the law should make it a point to submit as much evidence of probable cause for the issuance of a warrant as is at hand, rather than risk a bald statement of a fact, gambling with the courts as to its sufficiency. If the facts are available from which a conclusion is justified, why should they not be required to be shown? It surely would have in no manner defeated the operations of the prohibition laws in this case to have required the applicant to show facts from which he was able to determine the keg's contents. He says it contained ''intoxicating beverages,'' but how did he arrive at such conclusion?

In discussion of the authorities bearing upon the sufficiency of like affidavits for the issuance of a search-warrant, Cornelius in his recent (1926) splendid treatise on Search and Seizure (sec. 90) says: ''It frequently occurs that the language set forth in the affidavit for the search-warrant is in the form of a positive averment of facts, and yet the facts and circumstances surrounding the alleged transaction are of such

character that the averment of facts can be nothing else than conclusion of the affiant. Is such an affidavit sufficient to form the basis for the issuance of a search-warrant? Examples of this character are that 'the affiant saw certain persons serving intoxicating liquors but that the same were poured out before the affiant could arrest the individuals.' Averment that 'affiant saw from a distance intoxicating liquor being sold,' where it does not appear that the affiant actually had any of the intoxicating liquor in his possession. Again, the affidavit may contain the bare, naked statement that at a certain named street address, a certain designated individual has in his possession intoxicating liquor, without disclosing by what means the affiant secured this information. Regardless of the form in which such a conclusion may be stated, it seems clear that upon the principles established by the cases thus far adjudicated, such an averment in the affidavit is not an averment of fact, and does not constitute probable cause for the issuance of a warrant."

The fact that Manning's affidavit was not in form, on information and belief, and that he bravely swore that Baracker illegally possessed "intoxicating beverages," does not make his statement legal evidence of facts. "It is not enough that the form of the affidavit leaves it possible that the affiant might have personal knowledge as to the possession of intoxicating liquor and as to facts tending to show that such possession was illegal." (*Giles* v. *United States* (C. C. A.), 284 Fed. 208.) In the case last cited the circuit court of appeals, first circuit, in discussing the sufficiency of a like affidavit, said: "Lordan's affidavit was, in its avoidance of a statement of facts for the judicial consideration of the commissioner, exactly adapted to create such a situation as was shown at the trial to exist in the case at bar. In fact, as Lordan testified at the trial, he had not been in Giles' drug store for three or four months. He knew nothing about the possession. legal or illegal, by Giles of intoxicating liquor, except as he heard rumors, or as complaints were made to him by one or more

unnamed persons. That in this case these rumors appeared to have had some foundation is, for present purposes, immaterial. Our law does not contemplate that homes and business premises shall be thus invaded, unless and until some person takes the responsibility of disclosing under oath to a judicial tribunal facts from which such tribunal—not the applicant or affiant—finds probable cause to believe articles, particularly described and properly seizable on search-warrant, are in a place, also particularly described. In this case, as no facts whatever were put before the commissioner, he was ousted from his judicial function, and remitted to a performance purely perfunctory. The prohibition agent was applicant, affiant, in effect the judge of the existence of probable cause, and the officer serving the writ. This is a very dangerous amalgamation of powers."

The principle for which I contend is very admirably and vigorously expressed by the supreme court of the United States in the case of *Weeks* v. *United States,* 232 U. S. 383, Ann. Cas. 1915C, 1177, L. R. A. 1915B, 834, 58 L. Ed. 652, 34 Sup. Ct. Rep. 341 [see, also, Rose's U. S. Notes], in language so plain that all should understand, and no question again arise as to the extent of the constitutional guaranties of the people against unreasonable searches and seizures. In that case the court, speaking through Mr. Justice Day, said: "The effect of the Fourth Amendment is to put the courts of the United States and federal officials, in the exercise of their power and authority, under limitations and restraints as to the exercise of such power and authority, and to forever secure the people, their persons, houses, papers, and effects against all unreasonable searches and seizures under the guise of law. This protection reaches all alike, whether accused of crime or not, and the duty of giving to it force and effect is obligatory upon all entrusted under our federal system with the enforcement of the laws. The tendency of those who execute the criminal laws of the country to obtain conviction by means of unlawful seizures and enforced confessions, the

latter often obtained after subjecting accused persons to unwarranted practices destructive of rights secured by the federal Constitution, should find no sanction in the judgments of the courts which are charged at all times with the support of the Constitution and to which people of all conditions have a right to appeal for the maintenance of such fundamental rights.'' And, as well stated by our late Chief Justice Brantly, for this court, in comment of the language above quoted: ''This forceful statement of the learned Justice applies as well to the guaranty found in our own Constitution; for, except that the order in which the several clauses in it are arranged is different, it is expressive of the same fundamental principles and was intended to be equally as effective to prevent an invasion of the rights of the citizen of the state under the guise of law by the state government or any of its officers. Since it was intended to take away from the legislature the power to authorize an invasion of the rights of the citizen by a search of his home or a seizure of his person or property in any other case than it permits, it is to be strictly construed in his favor. On this subject the eminent author, Mr. Cooley, in his work on Constitutional Limitations, has this to say: * * * 'As search-warrants are a species of process exceedingly arbitrary in character, and which ought not to be resorted to except for very urgent and satisfactory reasons, the rules of law which pertain to them are of more than ordinary strictness; and if the party acting under them expects legal protection, it is essential that these rules be carefully observed. In the first place, they are only to be granted in the cases expressly authorized by law; and not generally in such cases until after a showing made before a judicial officer, under oath, that a crime has been committed, and that the party complaining has reasonable cause to suspect that the offender, or the property which was the subject of the instrument of the crime, is concealed in some specified house or place. And the law, in requiring a showing of reasonable cause for suspicion, intends that evidence shall be

given of such facts as shall satisfy the magistrate that the suspicion is well founded; for the suspicion itself is no ground for the warrant except as the facts justify it.' (Page 429.)'' (*State ex rel. Samlin* v. *District Court, supra.*)

Additional recent decisions of the supreme court of the United States fully sustain the views herein expressed. (*Agnello* v. *United States* (Oct. 12, 1925), 70 L. Ed. 1; *Gouled* v. *United States* (Feb. 28, 1921), 255 U. S. 298, 65 L. Ed. 647, 41 Sup. Ct. Rep. 261 [see, also, Rose's U. S. Notes Supp.]; *Silverthorne Lumber Co.* v. *United States* (Jan. 26, 1920), 251 U. S. 385, 64 L. Ed. 322, 40 Sup. Ct. Rep. 182; see, also, *Testolin* v. *State* (Wis.), 205 N. W. 825, and other Wisconsin cases therein cited; *In re Liquors Seized at Auto Inn*, 204 App. Div. 185, 197 N. Y. Supp. 758.